The Wabash, St. Louis and Pacific Railway Company *v.* Farver.

Judgment affirmed.

Filed May 25, 1887.

———◆———

No. 12,380.

THE WABASH, ST. LOUIS AND PACIFIC RAILWAY COMPANY *v.* FARVER.

NEGLIGENCE.— *When Employer not Liable.—Contractor.—Master and Servant. —Nuisance.*—Where work which does not necessarily create a nuisance, but is in itself harmless and lawful when carefully conducted, is let by an employer, who merely prescribes the end, to another who undertakes to accomplish that end by means which he is to make use of at his discretion, the latter is, in respect to such means, the master, and if a third person is injured by the negligent use thereof, the employer is not answerable.

SAME.—*Operating Portable Steam-Engine Near Highway.— Not Necessarily a Nuisance.*—It is not necessarily a nuisance to operate a portable steam-engine, in a careful manner, in close proximity to a public highway.

SAME.—*Railroad.—Frightened Horse.—Negligence of Independent Contractor.*— A railroad company is not liable for an injury to a traveller on a highway, through the fright of his horse, caused by the negligence of the owner of a portable steam-engine in operating it, near the highway, under a contract with the company to pump water out of the way of an excavation which is being constructed by the latter, where he has exclusive control of the engine and of the manner of using it.

From the DeKalb Circuit Court.

*C. B. Stuart* and *W. V. Stuart,* for appellant.

*C. E. Emanuel,* for appellee.

MITCHELL, J.—This action was brought by Farver against the railway company to recover damages for personal injuries alleged to have been sustained by him while lawfully pursu-

ing his way along a public highway in a carriage which was overturned in consequence of his horse having taken fright at a portable steam-engine, alleged to have been negligently placed in or near the highway by the company. The confused state of the record makes it difficult to determine whether the case was tried upon one or both the complaints which are copied into the transcript. Although the one filed last is styled an amended complaint, the subsequent proceedings indicate that both were treated as in the record. The case seems to have been tried upon that theory.

Counsel are at variance, however, as to this matter, but the view we take of the case makes it quite immaterial whether it be one way or the other.

The evidence tends to show, without conflict or substantial dispute, that in September, 1882, the railway company was engaged in constructing a well or reservoir, from which to supply a water station on the line of its road, near Auburn, Indiana. Running water interfered with the work, and it became necessary to cause the accumulating water to be pumped out of the way, so as to prevent it from running into the well or reservoir which was in process of construction. The construction of the well and laying pipes thence to the water station had been committed to the charge of a Mr. Kress, an employee of the railway, who, with a force of men under his control, was engaged in providing means to supply the station with water. Williams, who resided in or near Auburn, was the owner of a small portable steam-engine, which he was accustomed to employ in sawing wood, threshing grain, pumping water, and the like, as opportunity offered. He contracted with Kress, for a stipulated *per diem*, to furnish and operate his engine in pumping, at such times as might be necessary, in order to keep the water from interfering with the work which the latter was constructing. Williams agreed to furnish his engine and personally superintend the running of it, and to provide and pay for such assistance as he needed in keeping the water from obstruct-

ing the progress of the work. If it became necessary that he should run the engine at night he was to receive extra compensation.

In pursuance of this agreement the latter placed his engine in a vacant lot, some six feet or more outside the line of a public highway which intersected the railway company's line at or near the point where the reservoir was being constructed. So far as appears, he selected the location of the engine, and controlled its operation, as the work he engaged to do required. When the accumulated water was pumped down to a certain level, or when persons were passing on the highway, the engine was stopped, and when the water rose to a certain height the pumping was resumed. While Williams was thus engaged in carrying out his agreement, the plaintiff's horse, in passing along the adjacent highway, took fright at the engine, and became unmanageable. The plaintiff was thrown from his carriage and injured. The question is, whether, under the circumstances, the railway company is liable for the negligence of Williams, assuming that he was negligent in operating his engine so near the public highway.

The rule which controls in cases of this class has become well established, and has more than once been recognized and applied by this court. *Ryan* v. *Curran*, 64 Ind. 345 (31 Am. R. 123); *Sessengut* v. *Posey*, 67 Ind. 408 (33 Am. R. 98); *City of Logansport* v. *Dick*, 70 Ind. 65 (36 Am. R. 166).

Under this rule, where work which does not necessarily create a nuisance, but is in itself harmless and lawful, when carefully conducted, is let by an employer, who merely prescribes the end, to another who undertakes to accomplish the end prescribed, by means which he is to employ at his discretion, the latter is, in respect to the means employed, the master. If, during the progress of the work, a third person sustains injury by the negligent use of the means employed and controlled by the contractor, the employer is not an-

swerable. The inquiry in such a case is, did the relation of master and servant subsist between the person for whom the work was done, and the person whose negligence occasioned the injury? If, in rendering the service, the person whose negligence caused the injury was in the course of accomplishing a given end for his employer, by means and methods over which the latter had no control, but which were subject to the exclusive control of the person employed, then such person was exercising an independent employment, and the employer is not liable. If, on the other hand, the end to be accomplished was unlawful, or if in and of itself it necessarily resulted in the creation of a nuisance, or in making a place dangerous which the employer was under a peculiar obligation to keep secure, then, regardless of the relation which existed between the employer and the person whose negligent conduct caused the injury, the employer is liable for a breach of duty. *Cuff* v. *Newark, etc., R. R. Co.,* 35 N. J. Law, 17 (10 Am. R. 205; 9 A. L. R., N. S., 541); *Smith* v. *Simmons,* 103 Pa. St. 32 (49 Am. R. 113); *Harrison* v. *Collins,* 86 Pa. St. 153 (27 Am. R. 699); *School District, etc.,* v. *Fuess,* 98 Pa. St. 600 (42 Am. R. 627); *Hunt* v. *Pennsylvania R. R. Co.,* 51 Pa. St. 475; *Callanan* v. *Burlington, etc., R. R. Co.,* 23 Iowa, 562; *Eaton* v. *European, etc., R. W. Co.,* 59 Maine, 520 (8 Am. R. 430); *De Forrest* v. *Wright,* 2 Mich. 368; *Moore* v. *Sanborne,* 2 Mich. 519; *Corbin* v. *American Mills,* 27 Conn. 274; *Bailey* v. *Troy, etc., R. R. Co.,* 57 Vt. 252 (52 Am. R. 129); Wood Master and Servant, section 313, *et passim;* Cooley Torts, 548. The application of the foregoing principles to the facts in hand leads to the conclusion that the appellant was not liable.

The work contracted to be done was not in itself unlawful, nor was it necessarily a nuisance to operate a portable steam-engine in a careful manner in close proximity to a public highway. Injury could only result from its negligent use. It would not do to say that the operation of a

MAY TERM, 1887.    199

The Wabash, St. Louis and Pacific Railway Company *v.* Farver.

portable engine, near a public highway, necessarily resulted in creating a nuisance, when it is according to daily experience, during certain seasons of the year, to see steam threshing-machines in operation on every hand, and often necessarily close to public highways. Road engines propelled by steam, and portable engines operated by steam, have become familiar in every agricultural community. To declare that their use near, or their passage over, a public highway constituted a nuisance, would be practically to prohibit their use in the manner in which they are customarily employed and moved from place to place. It must be supposed that horses of ordinary gentleness have become so familiar with these objects as to be safe, when under careful guidance. *Piollet* v. *Simmers,* 106 Pa. St. 95 (51 Am. R. 496) ; *Gilbert* v. *Flint, etc., R. W. Co.,* 51 Mich. 488 (47 Am. R. 592); *Macomber* v. *Nichols,* 34 Mich. 212 (22 Am. R. 522).

Now as to the relation between the railway company and Williams, keeping in view the rule that where an employee is exercising an independent employment, and is not under the control and direction of the employer, the latter is not responsible for the negligence or misdoings of the former. *King* v. *New York Central, etc., R. R. Co.,* 66 N. Y. 181 (23 Am. R. 37). It is nowhere denied but that Williams was employed to furnish and superintend the running of his engine, to the end that the water might be pumped out of the way, so as to admit of the prosecution of the work in which the railway company was engaged. In respect to the engine, and the manner of operating it, he was the sole master, and had the right to employ whomsoever he pleased to assist him. Neither the railway company nor any of its employees had the right to run the engine, or to interfere in the manner of its running, or to direct its owner how or when it should be run. The only right the company had in respect to the matter was to require Williams to accomplish the end of keeping the water out of the way of its workmen. In respect to his engine, and its control, and his liability for its negligent use, the lat-

ter was as much an independent contractor when pumping water for the railway company as when sawing wood or threshing wheat for persons in the neighborhood. His relation to the railway company, while executing his contract for it, was precisely the same as to others, while executing work for them with his engine under contracts. It would be a startling proposition to affirm that every person who employs the owner of an engine and machinery to saw wood or thresh his crop would be liable to any person who might be hurt through the negligence of the operator or his assistants, although the employer had no control over the machinery and no immediate direction over those engaged in its operation.

The conclusion thus reached upon the facts renders it unnecessary that we should examine in detail all the various questions discussed in the briefs. The evidence does not sustain the finding. The court erred in overruling the motion for a new trial.

Judgment reversed, with costs.

Filed May 26, 1887.