## STALDTER v. CITY OF HUNTINGTON ET AL.

[No. 18,678. Filed October 31, 1899.]

MUNICIPAL CORPORATIONS.—*Personal Injury of Employe of Contractor.*—Plaintiff brought suit against a city and its contractors for damages on account of personal injuries sustained while at work in a sewer. The evidence showed that in making the excavation for the sewer dynamite was used in blasting the stone, and that plaintiff, in removing the stone and earth loosened by the explosion, struck a piece of dynamite, which exploded and injured him. The city exacted a bond of the contractors, indemnifying it against damages arising from negligence in the prosecution of the work, but it had no control over the work further than to see that the improvement conformed to the requirements of the plans and specifications, and had nothing to do with the employment of the servants of the contractors. *Held,* that the court did not err in directing the jury to return a verdict for the city. *pp. 354-363.*

MASTER AND SERVANT.—*Injury of Servant.—Knowledge of Danger.—Negligence.*—No error was committed in directing the jury to return a verdict for defendants in the trial of an action against a city and its contractors for injuries sustained by plaintiff by reason of an explosion of dynamite in the sewer in which he was at work, where the evidence disclosed that the unsafe condition of the trench was as obvious and well known to plaintiff as to his employers. *pp. 363-368.*

From the Kosciusko Circuit Court. *Affirmed.*

*B. F. Ibach, J. G. Ibach, W. D. Frazer* and *O. Oldfather,* for appellant.

*J. F. France, Z. T. Dungan, Walter Olds* and *C. F. Griffin,* for appellees.

JORDAN, C. J.—Appellant sued the city of Huntington, and Keefer and Hallwood, in the Huntington Circuit Court, to recover damages on account of personal injuries sustained by reason of an explosion of dynamite while appellant was at work upon the construction of a sewer in said city. The defendant Hallwood, it appears, was not served with process, and the action was prosecuted only against the city of Huntington and Keefer. The cause was transferred to the Kos-

Staldter *v.* City of Huntington.

ciusko Circuit Court and, at the close of plaintiff's evidence, the court, upon the separate request of each of the defendants, instructed the jury to return a verdict in favor of the defendants; which was accordingly done. This ruling is assigned in the lower court as a cause for a new trial. It is assigned as error in this appeal, among others, that the trial court erred in overruling the motion for a new trial, and it is insisted by appellant's counsel that the cause under the evidence ought to have been submitted to the jury for their determination. This seems to be the principal question involved in this appeal.

The complaint is in three paragraphs. The first seeks to recover for the injury sustained by the plaintiff by reason of an explosion of dynamite, which occurred on November 9, 1894, while he was in the employ of the defendants as workman upon the sewer. Counsel for appellant, however, seemingly do not claim any right to recover under the evidence on this paragraph. In fact it may be said that there is no evidence in the record which in any manner can be said to sustain a recovery upon the cause of action as alleged in the first paragraph; and therefore it may be considered as eliminated from the case, so far as this appeal is concerned.

The facts, as alleged in the second paragraph of the complaint, may be said to be as follows: The city of Huntington is a municipal corporation organized under the general laws of this State, and, as such city, it undertook to have a sewer constructed, and for that purpose entered into a written contract with the defendant Keefer and his partner, one Hallwood, to construct this sewer. In order to construct the sewer it was necessary to excavate a "flinty rock" and, before the city contracted with the contractors, Keefer and Hall-wood, the common council thereof knew that these contractors would use a powerful explosive material known as dynamite in blasting and excavating this rock, and that it would be necessary that the dynamite should be handled by careful and competent persons in order to avoid injury to per-

sons and property; that, from the time of the commencement of the work upon the sewer up to the 9th day of November, 1894, the city knew that these contractors were using dynamite in blasting this rock and that it was handled and used by careless and incompetent men who, by their carelessness, had caused the death of individuals, and the destruction of property; and, notwithstanding this knowledge and notice upon the part of the city, it failed to direct what care should be exercised in the use of the dynamite, or what precaution should be taken by said contractors in the use thereof, in order that life and property might be protected. After alleging these facts, the pleading proceeds to aver that the plaintiff was employed by said contractors to work for the city of Huntington on this sewer in shoveling dirt and stone from the sewer, and that he was ignorant of the care and methods necessary to be employed in handling dynamite and had nothing to do with the use thereof; and it was no part of his duty to work about the sewer where the same was used in blasting the rock, but his duty was to shovel dirt and rock out of the sewer after the blasts had been made and the rock had been picked loose by other employes.

It is then averred that on December 2, 1894, the plaintiff and several other employes of said city were ordered by said contractors to shovel dirt and stone from the sewer at a place different from where they had previously worked, and that one of said workmen struck a piece of undischarged dynamite hidden in said rock, and which had been placed there as a charge, by order of the contractors, to be fired off to loosen the rock, by employes whose duty it was to do the blasting; that for some reason this dynamite was left undischarged after an attempt had been made to discharge it, and no examination was made to see if any dynamite remained undischarged; that a stroke made by said workman with his pick caused the dynamite to explode with great force, whereby the plaintiff, without any fault or negligence on his part, was seriously injured by means of stone and dirt

being hurled against him; that he did not know, at the time of the accident, that the place where he was injured was one of danger, but that its dangerous character was known to said contractors; that neither the plaintiff nor the employe, who exploded the dynamite, had any knowledge that there was any dynamite at or near where they were at work and that the defendants did not notify plaintiff that such place, where the accident occurred, was more dangerous than the place where he had previously worked; that the defendants knew that the charge of dynamite had been placed where it exploded, at the time of the injury, but they did not make an examination to learn if any of it remained undischarged; wherefore, plaintiff says, because of such negligence of said defendants, and without any fault on his part, he was injured as aforesaid, etc.

The third paragraph of the complaint, after alleging that the city of Huntington is a municipal corporation, etc., states that it entered into a written contract with its codefendants, Keefer and Hallwood, to construct a sewer. It then proceeds to set forth substantially the following facts: That under this contract it was provided that these contractors should employ laborers who were residents of the city of Huntington, except experts; that it was also provided therein that the work in the construction of such sewer was to be performed in a workmanlike manner to the satisfaction and acceptance of the city engineer and common council; that said contractors further agreed under the contract to hold and save said city harmless from all damages arising out of the construction of said sewer and sustained by citizens or their property on account of blasting by the use of dynamite, or from leaving pits or openings to said sewer unprotected; that, in order more fully to protect and indemnify itself, in the event it should be compelled to pay any such damages, the city took from said contractors a good and sufficient bond.

In the construction of said sewer it became necessary to excavate a "hard, flinty rock"; which fact was known to the

Staldter *v*. City of Huntington.

city before it let the contract for said improvement, and it well knew that the contractors, in blasting and excavating such rock, would use dynamite, and that it would require careful persons to handle such explosive material, in order to avoid injury to persons and property. It is further charged in this paragraph that the city of Huntington, having all the right of supervising said work, as above set out, failed in its duty in this, that it did not see that the common labor was done by residents of said city, and that experts were employed when necessary; that the city did not direct how or in what manner the dynamite should be used by said contractors, or what care or caution should be exercised in its use, in order to prevent injury to laborers, and made no rules or regulations in respect to the use of such dangerous material nor as to the manner that its inexperienced employes were to be instructed, so as to prevent injury; and that no such instructions were given to the plaintiff, etc. That from the commencement of the work upon the sewer until December 4, 1894, the city, it is alleged, well knew that the defendants were not employing men who were experts in the use of dynamite, and that neither were all of the common laborers, employed by them, residents of said city; and that it also knew that the work was not being done in a proper manner, by using such explosive material; and that said Keefer and Hallwood were allowing it to be handled by careless and incompetent men, "who, by their carelessness and negligence in handling this dynamite and in preparing the same by warming it at the fire instead of by warm water, which is the only safe way, caused destruction to property and death to individuals;" that neither at the time of entering into said contract, nor at any other time after the city had knowledge of the careless handling of such dynamite, did it demand that experts should be employed to handle such material, nor did it direct how it should be used, nor what precaution should be taken in its use to protect life and property; and that it wholly failed to exercise the right of

supervision as reserved by it in said contract. It is alleged that the plaintiff was "employed by said contractors to work for said city to shovel dirt and stone, under the agreement that said contractors had with the city, and that he was a resident of the city of Huntington but not an expert laborer."

Plaintiff's duty, it is averred, was to shovel loose stone and dirt out of the sewer as the work therein progressed, and he had nothing to do with the handling of dynamite or other explosive material, and had no means of knowing when or where the dynamite was used, and was ignorant of the care and methods necessary to be employed in its use in order to avoid injury to persons and property; and it was his duty only to shovel dirt and stone after the same had been loosened by the discharge of such dynamite at such place or places as he might be directed by said contractors; that in blasting said rock, it was the custom of the contractors, Keefer and Hallwood, to drill a number of holes into the rock and to charge the same by putting therein pieces of dynamite and exploding it by means of electricity "which was an imperfect machine, and did not discharge all of the dynamite and, when all care and caution was taken, it was not unusual for some of the charges to remain unexploded when loaded in the manner as above stated, as said contractors well knew"; and that plaintiff was ignorant of the fact that unexploded pieces of dynamite remained in the rock which had been blasted, and that this fact could only have been ascertained by some person who was an expert in the discharge of dynamite.

On the 4th day of December, 1894, while plaintiff and other employes of the city of Huntington were, by order of said contractors, engaged at work in shoveling dirt and stone from this sewer, and while one of said employes or workmen was carefully engaged with a pick in removing pieces of rock which had been broken up by blasting, he struck with his pick one of the unexploded charges of dynamite which was

hidden in a piece of rock, which fact was unknown to either the plaintiff or said employe. This piece of unexploded dynamite had been negligently permitted to remain in a hole of said rock without marking the place as one of danger and without any examination being made to discover if it remained in the rock unexploded. Neither the plaintiff nor the employe who struck the dynamite with his pick, and thereby exploded it, knew of the danger of the place at which they were at work.

It is further charged that said dynamite, when struck with the pick, exploded with great force, and hurled stone and dirt against the plaintiff, whereby he was permanently injured, without any fault or negligence on his part. The paragraph then charges that the injury so sustained by the plaintiff was due wholly to the negligence of the defendants in putting him to work in an unsafe place, of the danger of which he had no knowledge, and to the careless and negligent manner in which said work was done by the contractors as above set out; all of which was allowed and suffered to be done by the said city of Huntington; and in not informing plaintiff that the place where he was directed to work was one of danger, and in failing to have an expert to examine and discover, after every blast, if any dynamite remained undischarged, and to mark the place where it remained as one of danger. The pleading closes as follows: "Wherefore he [plaintiff] says that because of said carelessness and negligence of said defendants in placing this plaintiff in such an unsafe place to work, and without any fault or negligence or want of care or caution on his part, he was injured as aforesaid to his damage to the sum of $10,000, etc."

These two paragraphs of the complaint may be said to be indefinite, and certainly are loosely drafted. If either can be said to advance any particular or definite theory, under the facts as therein alleged, it is that the plaintiff was an employe of the city of Huntington, employed to work for it upon the sewer in question, through the agency of Keefer

and Hallwood, the parties with whom the city had contracted for the construction of such sewer; and that therefore the relation of master and servant, at the time of the accident, existed between the city and the plaintiff. The particular negligence charged to the defendants, under the averments of these paragraphs, and by which the injury sustained by the plaintiff seems to be attributed by the alleged facts, is that he was put to work by the defendants at a place in the sewer which had been rendered unsafe or dangerous by reason of the live or unexploded dynamite which was concealed or hidden in the loose rock; of which fact plaintiff and the other employes of the city, engaged with him in removing the dirt and rock, were ignorant, but which danger or peril was known to the defendants. Assuming that either one or both of the paragraphs state a cause of action, we may pass to an examination of the evidence and determine whether the trial court was justified in directing the jury to return a verdict in favor of the defendants upon the issues tendered by the complaint.

The evidence introduced by the plaintiff shows that the city of Huntington, under its charter rights, made a contract with Keefer and Hallwood to construct a sewer along certain streets of that city. This contract was reduced to writing and a bond was executed by the contractors for the faithful performance thereof. The formation of the earth through which the improvement was to be made consisted in the main of flinty rock. Above this rock there was a light surface of earth which could be removed with shovels. The sewer was large in its dimensions, being about seven or eight feet in diameter, the excavation being about twenty feet wide and fifteen feet and over in depth. In making the excavations it became necessary to use powerful explosives in order to blast this rock, and dynamite was used for that purpose. It appears that several holes would be drilled in the rock and then charged with dynamite, which was exploded by the means of an electric battery; and the rock and

dirt loosened by the explosion were after each blast removed from the sewer by shovelers in the employ of the contractors; and in this manner the work of excavating proceeded.    The work seems to have been under the supervision of a foreman employed by Keefer and Hallwood, and the latter of these contractors hired and paid all of the employes who were engaged at work upon the sewer, the plaintiff being one of the number.    The city of Huntington had no control over the work performed upon the improvement, and had nothing to do in regard to the employment of the servants of the contractors.    There is no evidence tending to establish that these contractors, in the employment of laborers to work in constructing the sewer, were the agents of the city.    They were simply independent contractors, and there is not even a scintilla of evidence going to show that the city had anything whatever to do with the employment of the plaintiff or that it gave him any directions in regard to the performance of his duty, so as to make him its own servant; and there is an entire absence of evidence to show that, at the time of the accident, which occurred December 4, 1894, or prior thereto, the relation of master and servant existed between him and the city.    All that the city reserved in respect to the work so let was the right to see that, as it progressed, the improvement conformed to the particular standard provided for under the plans and specifications.

The law is well settled that a person is not responsible for the acts of an independent contractor, to whom he has let a particular work or job, where he reserves to himself no control over the same except the right to see that it conforms to a particular standard.    Under such circumstances, as a general rule, the doctrine of *respondeat superior* does not apply. *Vincennes Water Co.* v. *White*, 124 Ind. 376; *Wabash, etc., R. Co.* v. *Farver*, 111 Ind. 195.    There are exceptions, however, to this general rule, among which the following may be noted:    First, where the work itself is unlawful.    (In such a case the person authorizing the work to be done can

not shield himself from liability by reason of the fact that his orders or directions were carried out by a third party.) Second, where he interferes with the servants of the contractor, directing them in the performance of their duties so as to make them his own servants. Third, where the contractor does the work or leaves it in such a manner or condition as to create a nuisance which the owner or controller of the premises suffers or permits to exist, and from which damages result. *Wabash, etc., R. Co.* v. *Farver, supra.* In addition to our own cases, among the great number of authorities supporting this doctrine are the following: *Clark* v. *Fry*, 8 Ohio St. 358; *Creed* v. *Hartmann*, 29 N. Y. 591; *Storrs* v. *Utica*, 17 N. Y. 104; *Carman* v. *Steubenville, etc., R. Co.*, 4 Ohio St. 399; *Congreve* v. *Morgan*, 5 Duer 495; *Water Co.* v. *Ware*, 16 Wall. (U. S.) 566; *Mayor* v. *Furze*, 3 Hill 612; *Dygert* v. *Schenck*, 23 Wend. 446; *Vanderpool* v. *Husson*, 28 Barb. 196; *Matheny* v. *Wolffs*, 2 Duv. (Ky.) 137; *Milford* v. *Holbrook*, 9 Allen (Mass.) 17; *Bower* v. *Peate*, L. R. 1, Q. B. D. 321; *Ellis* v. *Sheffield Gas Co.*, 23 L. J. Q. B. D. (N. S.) 42.

The plaintiff, however, does not under his complaint seek to bring his case within any of the exceptions to this general rule.

Counsel for appellant lay some stress upon the fact that the contractors obligated themselves, under clause 32, §3106 R. S. 1881 and Horner 1897, §3541 Burns 1894, to save the city harmless in regard to damages arising out of their negligence. This fact, however, under the circumstances, lends no support to appellant's theory of the case. The plaintiff, upon whom rested the burden of establishing all the material issues tendered by his complaint, having failed to introduce any evidence as against the city of Huntington, to support such issues, the court did not err in directing a verdict in favor of the city. *Oleson* v. *Lake Shore, etc., R. Co.*, 143 Ind. 405, 32 L. R. A. 149, and cases there cited. We are of the opinion also that the trial court, under the cir-

cumstances, properly directed a verdict in favor of the defendant Keefer.

We have .heretofore stated, in a general way, what the evidence discloses in regard to the character of the sewer and as to the manner in which the work of blasting the rock was conducted. The evidence further discloses that appellant was hired by Keefer and Hallwood; that he worked along the line of the sewer with other laborers in shoveling out dirt and broken stone which had been loosened by means of blasting; and that these employes also performed other work and sometimes assisted in blasting. Appellant was in the employ of the contractors from some time in June until December 4, 1894, the date of the accident. He generally worked as one of the shoveling gang; and after each blast the men composing this gang would, as the evidence discloses, enter the sewer and shovel out the loose dirt and broken stone. For some reason not shown by the evidence, at times, some of the charges of dynamite, that were placed in the holes drilled in the rock, as previously stated, would remain unexploded in some pieces of rock that were loosened by the blasting, and sometimes the shovelers and others engaged in removing the loose dirt and stone would dig out pieces of undischarged dynamite and throw them out of the sewer. This the plaintiff seems to have seen with his own eyes, and he states in his testimony that on one occasion he picked up in the sewer a piece of live dynamite. That the plaintiff had knowledge of the manner in which the blasting was done and that some of the dynamite charges did not explode, but remained in the loose rock that was found in the sewer, we think the evidence clearly establishes. The foreman, who seems to have been placed in charge of the work by the contractors, appears to have, from time. to time, warned the men engaged in working upon the sewer to be careful and look out for this unexploded dynamite. The plaintiff, in giving his evidence upon the trial, in response to questions propounded to him upon cross-examination, among

Staldter *v.* City of Huntington.

other things, testified as follows in regard to the manner in which the blasting was performed, and what he saw and did in respect thereto: "Q. They first drilled holes in there, did they, and loaded them with dynamite? A. Yes. Q. And then they attached a wire to the cap? A. I believe so. Q. Well, now, after that was done—you saw that done? A. Yes. Q. And then they covered that over with those heavy timbers, over the loose dynamite there? A. Yes, sir. Q. Covered the whole top of the sewer? A. Yes, sir. Q. And joined those together tight? A. Yes. Q. Even wedged them tight, didn't they? A. Yes, that is right. Q. Then they discharged the dynamite? A. Yes. Q. Those heavy timbers on the top of the surface were there to prevent the stones from flying all over? A. Yes, that is right. Q. They did that to protect you? A. Yes. Q. They would blast a strip forty feet long wouldn't they, in the sewer? The blasting gang would blast about forty feet at a time and more? A. Sometimes they had a few holes and sometimes they had a whole string of holes. Q. They would continue the blasting there, before they put the men in, for about forty feet? A. Yes. Q. And they would move up and your gang of men came in to shovel the loose stone out? A. Yes. Q. And you were working there following up the blasting gang, and throwing the loose stone out? A. Yes, we did follow up the blasting gang but sometimes we were ordered back and sometimes we went up about forty or sixty feet."

The plaintiff not only stated that he picked up a piece of dynamite in the sewer upon the occasion heretofore mentioned, but he admitted that he frequently saw pieces of dynamite picked up and thrown out of the sewer by the men while at work, but he did not remember of picking any of it up himself except upon one occasion. He further testified that at times there would be an undischarged load of dynamite in the loose pieces of rock which some of the men in the shoveling gang would dig out, and that he was present

and saw them dig it out.   He also testified that he knew it was the same dynamite that was being used to blast the rock, and also knew that dynamite had been used in the city of Huntington for years past for blasting rock in excavating for sewers; and by his testimony he showed, to an extent at least, that he was familiar with the nature of dynamite and what would cause it to explode, and disclosed that he was familiar with the process employed by the defendants in blasting the rock in question, and that the danger, if any, to which he was subjected at the place in which he was at work, at the time he sustained his injuries, was as well known to him as to his employers.

The plaintiff introduced Henry Keefer, the defendant, as a witness, and he testified that he had been familiar with the character of dynamite, and had used it for several years in blasting, when engaged in the construction of sewers.   He stated that in blasting the rock in the sewer in controversy, the holes were drilled in the rock to the depth of four feet and the dynamite placed therein and exploded by means of an electric battery, and that this machine was in perfect order and would discharge twenty or thirty holes at one explosion. He further testified that there were no other means of ascertaining whether all of the dynamite at the bottom of these holes had exploded except by excavating and throwing out the loose stone; and the only means for removing pieces of stone broken up with the blasts was by shovels and picks; and the men who used these implements were instructed to be careful and remove all unexploded dynamite; and, when it was known that any of the dynamite had not been discharged, the hole was marked and the men notified of that fact and directed to be careful.

The evidence shows that the occasion upon which plaintiff was injured, was on December 4, 1894; that he and one Henry Bane, along with other employes, were at work in the sewer, which was then nearing completion, engaged in removing the loose stone and dirt with picks and shovels.   Bane

was picking the stone loose with his pick, and plaintiff was throwing it out of the trench with a shovel. Bane accidentally struck a piece of unexploded dynamite with his pick, which caused it to explode, causing great injury to himself and plaintiff.

One Henry Wagner was also introduced as a witness for plaintiff, and he testified that he was the foreman in charge of the blasting and shoveling gangs of men who were at work upon the sewer. He remembered the explosion on December 4, 1894. This witness had been at the place where the accident occurred about ten minutes before it happened, and had made an examination among the loose stones and dirt to discover if any dynamite remained there undischarged, and discovered none.

We have carefully read all of the evidence, and it fully discloses, we think, without any conflict, that the alleged dangerous or unsafe character of the place where the plaintiff was at work at the time he was injured by the dynamite, which was exploded when Bane, his fellow servant, struck it with his pick, was equally open to the observation of both the plaintiff and his employers, and that in this respect they were on an equality with each other. The plaintiff had been in the employ of the defendants, Keefer and Hallwood, from June until the time of the accident in the following December; he was familiar, it appears, with the process of exploding the dynamite, and knew that all of it, at times, was not discharged, or that occasionally some of the charges remained unexploded in the broken pieces of rock, and that the pieces of stone had to be removed from the trench by himself and his fellow workmen. Conceding that the alleged breach of duty on the part of the defendants caused the plaintiff to be exposed to a peril in the place where he was engaged at work, which resulted in the injury of which he complains, still he appears to have voluntarily remained in their service with knowledge of the danger in question, and, under the circumstances, he must be deemed to have assumed

the risk incident to such peril. *Swanson v. City of Lafayette*, 134 Ind. 625; *Big Creek Stone Co. v. Wolf*, 138 Ind. 496; *Rogers v. Leyden*, 127 Ind. 50; *Wabash R. Co. v. Ray*, 152 Ind. 392.

The evidence indisputably discloses that this unsafe condition of the sewer trench, where plaintiff was at work at the time he sustained the injury, was as obvious and as well known to him as it was to his employers, and therefore defeats his action. Without a showing in his complaint that he was ignorant of the danger in question and that the defendants had knowledge thereof, he could have had no standing in court. To recover a judgment under the evidence, it was necessary that both of these material facts be established. It is sufficient to say that the evidence does not even tend to support the theory of the complaint, and the plaintiff is not in a position to assert any substantial claim to a verdict thereunder, and the court therefore properly directed the jury to return their verdict for the defendant Keefer.

Judgment affirmed.