NYBACK v. CHAMPAGNE LUMBER CO.

(Circuit Court of Appeals, Seventh Circuit. June 25, 1901.)

No. 722.

1. TRIAL—INSTRUCTIONS—QUESTIONS OF FACT.

Where the judge of a federal court undertakes to discuss in his charge the evidence upon a question of fact which is submitted to the jury, he should carefully separate the law from the facts, and submit the latter unequivocally to the jury, in such form that the jury will understand that as to the facts the instruction expresses merely his opinion, by which they are not bound.

2. SAME.

Where a question of fact is properly submitted to the jury, it is error for the judge in his charge to further state that in his opinion the jury will not be justified in finding such fact as alleged by the plaintiff, "because the evidence on that question is all on one side," such statement being in effect a withdrawal of the question from the jury on the ground that the evidence is insufficient in law to support a finding for plaintiff.

3. MASTER AND SERVANT—ACTION FOR INJURY OF SERVANT—EVIDENCE OF NEGLIGENCE.

The question whether the owners of a sawmill were negligent in failing to maintain a guard rail around an opening in the floor of the mill, into which plaintiff stepped and received an injury, is one of fact for the jury; and the opinion of witnesses that it was impracticable to maintain such guard is not conclusive on the jury, but it is their right and duty to use their own general knowledge and to exercise their own judgment in determining the question and the weight to be given to the opinions of the witnesses in the light of the facts shown by the evidence.

4. SAME—DEFECTIVE CONSTRUCTION OF SAWMILL—EVIDENCE.

The fact that a sawmill was "constructed in the customary manner of all mills" in that region, while proper to be considered on the question, is not conclusive against an allegation of negligent or defective construction.

5. SAME—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE.

Where the testimony of the plaintiff in an action to recover for an injury resulting from his stepping into an unguarded opening in the floor of defendant's sawmill, in which he was a workman, showed that he had worked in the mill only an hour before the injury, and then not in the vicinity of the opening; that he had never worked in such a mill before, and was given no instruction,—it was error to instruct the jury, in effect, that, if the hole was in plain sight, plaintiff was bound to see it, and was guilty of contributory negligence if he did not.

**6. SAME—INDEPENDENT CONTRACTOR.**

Defendant, which owned and operated a sawmill, contracted with a third person to work up the slabs into lath and pickets, using machines in the mill which were run, kept in order, and lighted by defendant. Defendant owned the products, paid the wages of the workmen employed by such person, and paid him the remainder, if any, due, computed at a stipulated price per 1,000 for the lath and pickets made. *Held*, that such person was not an independent contractor, but a servant of defendant, put in charge of particular machines, and paid upon the terms stated, and that whatever duty there was to instruct an inexperienced workman employed in the operation of such machines as to the dangers of the employment remained a duty of defendant.

In Error to the Circuit Court of the United States for the Western District of Wisconsin.

Upon the return of this case to the circuit court after the decision upon the first writ of error (33 C. C. A. 269, 90 Fed. 774), an amended declaration was filed, in which to the original charge of failure properly to light the mill, to instruct the plaintiff where and how to do his work, and to warn him of the dangers incident thereto, a charge was added of negligent construction of the mill, in that proper and adequate guards, railings. or other means of protection were not placed and maintained at the south end and the east side of the hole or chute into which the plaintiff stepped, making it reasonably safe to employés working about it, which, it was alleged, could have been done without impairing the use for which the chute was designed. The amended declaration, as filed, omitted any reference to the question of employment by "an independent contractor," but a further amendment was inserted, containing, with other averments, the allegation "that the defendant so constructed and maintained said machinery and appliances (with the unguarded hole in the floor) with a view of their being used and operated by employés, and of having such employés do service in near proximity thereto, and made it known to the general public that such was the purpose of the construction and maintenance of said sawmill with such machinery and appliances, all of which action on the part of defendant constituted a general invitation to all persons desiring or finding employment in and about such sawmill." This seems to have been treated by the court and by the counsel upon both sides as sufficient to present an issue which should justify a recovery by the plaintiff, though not in the employment of the defendant at the time, if the injury resulted from negligent and faulty construction.

The assignment of error contains forty specifications, directed mainly to the court's charge, but most of them, besides being general and indefinite, were not taken until after the jury retired. Some of the specifications, instead of embracing a single proposition, as required by the rules of court (Columbus Const. Co. v. Crane Co., 41 C. C. A. 189, 101 Fed. 55; Stewart v. Morris, 37 C. C. A. 562, 96 Fed. 703), are based upon portions of the charge which include a number of distinct propositions; in one instance as many as eight, and in another twelve.

The charge of the court was lengthy, and, by reason of the method of its delivery, was confused, and in some particulars inconsistent. It consisted first of a series of "special requests on the part of the plaintiff," covering three pages of the printed record, and presenting both fact and law, as if designed to take the place of a charge by the court; next, of a like series of requests by the defendant, covering as much as eight pages of the record, devoted mainly to a presentation and discussion of the evidence bearing upon the questions in dispute, and especially upon the question of fact, which is argued at length, whether the plaintiff at the time he was injured was an employé of the defendant or of another, who was an independent contractor; and next of the court's own charge, which, excepting parts omitted as now unimportant, was as follows: "I had prepared, before I knew that these special instructions were to be given to the great length to which they have been drawn out, a general charge, which it is the habit of the court to do. I had modified the charge given three years

ago on the trial, which is quite lengthy and covers all the issues in the case, intending to give it to the jury. But, where counsel take it into their own hands to instruct the jury, I do not consider that it is part of the duty of the court to give general instructions covering the same ground, and therefore I shall submit the case to you upon the instructions which counsel have drawn, without giving the general charge of the court. * * * It seems to the court that the main issue in this case, after we get past the question whether the plaintiff was in the employ of the defendant, * * * relates to the question of responsibility for the injury. Who was responsible for the injury? The evidence shows that this young man came there a stranger (never had worked in a mill), and went to work in the mill on the afternoon of July 12, 1892, and that same afternoon. fell into that hole (stepped into the hole) and threw his hand upon the saw, and was thereby injured. The hole was made for the purpose of letting down the refuse slabs and stuff that came from the slasher. It had always been there and had been operated in that way. There is no evidence upon the part of the plaintiff tending to show that the mill was not constructed according to other mills in that vicinity,—other sawmills. On the part of the defendant a large number of witnesses testify that the mill was constructed like all other mills in northern Wisconsin, according to the usual custom of constructing mills in that respect. It is claimed on the part of the plaintiff that there should have been a guard around that hole, but the other witnesses tell you why there should not be a guard. They say if it was fenced up two or three feet high, so that a boy or man could not get into it, it would be of no use whatever for the passage of this refuse stuff, some of which is quite long. The evidence shows that the hole led down to a chute underneath, which after passing through the floor shot off to one side. The evidence tends to show that the long stuff or stuff of any length would not go through, and the chute would be practically of no use, if there was a guard around there to keep a man out. Now, I do not want to take that question from the jury; it is in the case; and yet I hardly think the jury will be warranted in finding that the mill was not properly constructed, so far as that hole is concerned, and that is all the allegation there is in regard to the construction of the mill. The only other ground of recovery has regard to the light. It is a question of fact for the jury whether there was any defective light there, and whether, if there was, the defendant was responsible for it. There is only one witness on the part of the plaintiff, and that is the plaintiff himself. All of the defendant's witnesses—a large number of them— testified that this accident happened about sundown, and that it was practically broad daylight, and that the hole could be seen by anybody. * * * There is no doubt that a person entering into the employ of another in a sawmill, where there is machinery of that kind which is extrahazardous, takes the ordinary risk of the employment. There is no doubt about that; he takes the ordinary risk of employment; and, while it is the duty of the employer to advise him of all extrahazards and dangers connected with the business, it is not the duty of the employer to advise him of the ordinary hazards which are perfectly plain to any one engaging in the business. * * * It is the duty of the person entering into that employ to use his eyes. No matter what his age is, he must use his eyes. And that. hole, according to this photograph, shows plain enough, and the saws show plain enough. Plaintiff says he didn't see the hole or see the saws. Well, he was there in the sawmill. It wouldn't be the duty of the defendant to inform him that there were saws there if they were right in plain sight. He was engaged to work about the saws, and it was part of his business to saw slabs there,—to take the stuff that came from the slasher, to push them up against the saws, and saw them into four-foot pieces to make into lath. That was part of his business, and his principal business. Can he say to the jury that he didn't know there were any saws there? Isn't he bound, if there were saws in plain sight, to see them with his eyes; and, if the hole was in plain sight, wasn't he bound to see the hole? The action is founded on the negligence of the defendant, and, if you cannot say from a preponderance of the weight of evidence that there was negligence on the part of the defendant that caused the accident, you cannot find a verdict

against the defendant. You cannot charge them with a loss they are not responsible for. Now, if the mill was in perfect order, and made according to the usual custom of mills, and it was properly lighted, what else is there from which you can charge the defendant in this case? Then, furthermore, there is no question but that the plaintiff must have been in the exercise of ordinary care and prudence himself. * * * The question is whether from the preponderance of the evidence you can say that this mill was improperly constructed or improperly lighted, by reason of which this plaintiff was injured without fault on his part. If he didn't see that hole, ought he to have seen it? Or was he guilt of any ordinary want of care or prudence in not knowing there was a hole there if it was in plain sight? Was he guilty of any want of ordinary care and prudence in not knowing that the saw was there coming up through the slasher where he was set to work if a man of ordinary eyesight could see it by using his eyes? These are questions for you to determine in fixing the responsibility for this injury. * * *"

At the conclusion of the charge, counsel for the plaintiff said: "I except to where the court says the master was not obliged to warn him of the ordinary dangers which the plaintiff could see. I also except to that part where the court says, in substance, if the mill was constructed in the customary manner, what else could the plaintiff complain of? etc.;" and thereupon the jury retired, but afterwards returned for further instruction; and one of the jurors having stated that he thought the plaintiff was in his proper place when injured, the court said: "It is a question of fact. The court didn't give you any instructions on that. It is a question of fact for you to say whether he was in the proper place or not, and whether he was guilty of any negligence in getting into the hole himself. If you find from the evidence he was guilty of negligence in getting into the hole, and that that contributed,—that it produced the result or contributed to produce it,—then he cannot recover. It is only in case the accident was the result of fault on the part of the defendant company that you can find the defendant liable. If the mill was properly constructed and properly lighted, and these risks—this hole and these saws—were open to common observation, and if the plaintiff saw them, or if he ought to have seen them and might have seen them, and it is the result of his own want of sight and carelessness in getting into the hole, it is difficult to see how he is entitled to a verdict." And thereupon, to a suggestion by counsel that the court had omitted to instruct that it was the duty of the defendant to instruct the plaintiff how to perform his duties, the court said: "That question is all before the jury. and the instructions on both sides have been exceedingly lengthy and full. 1 didn't think I would give any instructions at all, because the special instructions were so full. But I thought it might help the jury to call their attention to what I considered the essential issues in the case. I don't know as it would be worth while to read the instructions to the jury. What the jury is in doubt about is something that the court did not charge upon personally. It is a question of fact for the jury to say whether he was in his place or not, or whether he was guilty of any negligence in getting out of his place. The witnesses do not agree about that. The witnesses for the defendant think he was out of his place when he got around where the hole is. The question for the jury is whether there was any need of his getting into that hole, and whether he was guilty of any carelessness in doing it. He hadn't been there but a short time before he managed in some way to get in there." And thereupon the following colloquy ensued between a juror, the court, and counsel for the plaintiff: "Mr. Jay: I don't think it was negligence on his part or carelessness. 1 don't think it was carelessness upon his part. The Court: You think it is the fault of the mill? Mr. Jay: Yes, sir. The Court: Well, the court has told you on that point that I didn't think you would be justified in finding from the weight of the evidence in the case that the mill was faultily constructed, because the evidence on that question is all on one side. (Exception by plaintiff.) Mr. Jay: That is a thing I didn't want to speak of, because I wasn't well enough posted in regard to that. The Court: You are not to try this case according to your knowledge outside of the case. You are to try it accord-

ing to the evidence. The evidence shows that the mill was constructed in the customary manner of all the mills there, and they gave the reason for it,—that the work couldn't be done by having a fence around it, and if there was a fence around it they couldn't shove the refuse stuff through. All of them testify to that. (To which plaintiff excepted.) Mr. Jay: I claim that stepping in at that side next to the hole he wasn't out of his place according to the testimony. The Court: You are giving your view of the case. I hope the jury will be able to agree on the case. This is the third trial. But, if you are not able to agree after you have been out a reasonable time, you will say so. That is all there is to it. I don't see that you need any further instructions from the court. It is all a question of fact. Juror: Is that all? The Court: That is all unless you want something further. Mr. Bailey: I have just taken an exception to these last remarks as they were made. The Court: All right." The thirteenth, fourteenth, and fifteenth specifications of error challenge expressions of the court in this colloquy. The thirty-first specification is that the court erred in giving this instruction: "If the plaintiff was one of Barber's employés, then I think it was the duty of Barber to instruct him as to what to do, and to show him about the work, and to inform him of its ordinary dangers carefully, as every young man of that age who is green ought to be informed. That was a personal duty devolving upon Barber." Barber was the alleged independent contractor. The contract between him and the lumber company bearing date February 12, 1892, provided, in substance, that Barber should "bolt and manufacture and pack all the shingle timber furnished by" the lumber company "in their mill during the sawing season of 1892" as the lumber company should "reasonably direct," and also should pick out all the slabs suitable for lath and picket stock, manufacture same into lath of kinds and dimensions stated, select from such slabs all stock suitable for square and flat pickets, and carefully count, sort, and tie the lath with yarn furnished by the lumber company, and that in consideration of the faithful performance of these stipulations the lumber company should pay to him specified prices per thousand for the shingles, lath, and flat and square pickets; payment to be made as follows: At each and every pay day when the lumber company pays its own crew, it should pay men employed by Barber in the manufacture of lath, shingle, and pickets, and the balance, if any be due, to Barber; it being stipulated further that the payments of men and the settlements with Barber should be made up to and include such times as should be included in the payments to the employés of the lumber company. Barber, it is conceded, was pecuniarily irresponsible. For other facts reference is made to the opinion upon the first writ of error. 33 C. C. A. 269, 90 Fed. 774.

Julius J. Patek and John W. McGrath, for plaintiff in error.

John Van Hecke and Edward M. Smart, for defendant in error.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The better method of dealing with special instructions, doubtless, is to incorporate such as are approved in the charge of the court and give them to the jury, without mention of the fact that they were requested by either party. The right to ask special instructions does not include the privilege of submitting an argument upon the evidence, and no instruction or series of instructions explaining or discussing the bearing of the evidence either upon the whole case or upon a particular issue or question should be allowed to go to the jury as the work of counsel. Whatever presentation of evidence or explanation or discussion of the force of evidence is given to a jury in the form of instruction by the

court should be given as coming from the court; counsel being at liberty, of course, to make suggestions in order to supply any supposed omission or to correct a mistake of the court. This, however, is not a matter of assigned error, and is only preliminary to a consideration of the questions presented.

In its entire scope the charge of the court was distinctly and strongly adverse to the plaintiff; to such an extent, indeed, as hardly to be justifiable, unless the case was so clear as to have warranted a peremptory instruction for the defendant. In the federal courts, as the practice was explained and defined by the chief justice in Starr v. U. S., 153 U. S. 614, 624, 625, 14 Sup. Ct. 919, 923, 38 L. Ed. 841, 845, "the presiding judge may, if in his discretion he think proper, sum up the facts to the jury; and if no rule of law is incorrectly stated, and the matters of fact are ultimately submitted to the determination of the jury, it has been held that an expression of opinion upon the facts is not reviewable on error. Rucker v. Wheeler, 127 U. S. 85, 93, 8 Sup. Ct. 1142, 32 L. Ed. 102; Lovejoy v. U. S., 128 U. S. 171, 173, 9 Sup. Ct. 57, 32 L. Ed. 389. But he should take care to separate the law from the facts, and to leave the latter in unequivocal terms to the judgment of the jury, as their true and peculiar province. McLanahan v. Insurance Co., 1 Pet. 170, 182, 7 L. Ed. 98. As the jurors are the triers of facts, expressions of opinion by the court should be so guarded as to leave the jury free in the exercise of their own judgments. They should be made distinctly to understand that the instruction is not given to a point of law by which they are to be governed, but as a mere opinion as to the facts, to which they should give no more weight than it was entitled to. Tracy v. Swartwout, 10 Pet. 80, 96, 9 L. Ed. 354; Games v. Stiles, 14 Pet. 322, 10 L. Ed. 476." The charge before us exceeds these limitations. In respect to the vital issue whether the hole in the floor, into which the plaintiff stepped, should have been guarded, the court, in the first instance, said: "Now I do not want to take that question from the jury; it is in the case; and yet I hardly think the jury will be warranted in finding that the mill was not properly constructed, so far as the hole is concerned;" and, on the return of the jury into court for further instruction, said: "Well, the court has told you on that point that I didn't think you would be justified in finding from the weight of the evidence in the case that the mill was faultily constructed, because the evidence on that question is all on one side." It is a question of law whether given evidence is sufficient to justify a proposed finding, and, to avoid misunderstanding, the court's first statement should have been accompanied with an explanation "separating the law from the facts," and giving the jury to understand that the opinion expressed had reference only to the question of fact, and that that question was submitted to them upon evidence legally sufficient to support a verdict either way. The final statement, though doubtless not so intended, withdrew the question from the jury. When the jury is told that the evidence is all on one side, it is equivalent to an explicit direction to find accordingly. If in fact the evidence was all on one side, the ques-

109 F.—47

tion should have been expressly taken from the jury and the case submitted, as it was at the trial under the original declaration, upon the questions whether the injury of the plaintiff was attributable to the negligent failure of the defendant to light the premises properly, or to instruct him how to do his work, or to warn him of the dangers incident thereto. The court, however, proceeded on the erroneous idea that in considering whether there should have been a guard about the hole, or at either end or side of it, the jury could not exercise their own judgment, but were bound to follow the testimony of the witnesses, who were agreed substantially that all the sawmills in that part of the state had at the ends of their slashers unguarded holes like that in question, and that guards were impracticable. That was, however, a matter of opinion, about which, on the testimony, showing the size, position, surroundings, and purpose of the hole, the jurors not only had the right, but were in duty bound, to form their own judgment. The allegation of the declaration is that a railing at the south end and east side of the opening was practicable, and would not have impaired the use of the hole for the purpose intended. It was not a question whether the place should have been "fenced up two or three feet high, so that a boy or man could not get into it," or whether there should have been a guard "to keep a man out," but whether there might and should have been some form of guard or railing affording reasonable protection against an accidental stepping into the opening by an employé engaged at work near by. It is evident that a railing a few inches high—certainly one a foot or more in height—at the south end would probably have saved the plaintiff from the harm which befell him, and whether it should have been there, and whether its absence was the cause of the accident, were questions for the jury. Head v. Hargrave, 105 U. S. 45, 26 L. Ed. 1028; Bridge Co. v. Olsen (present session of this court) 108 Fed. 335. It was, of course, true, literally, as the jury was told, that they were not to try the case according to their knowledge outside of the case, but according to the evidence; but the context makes entirely probable the inference by the jury that they were bound to accept the statements and opinions of the witnesses, though convinced, in the light of their own experience, knowledge, and judgment, that the witnesses were mistaken or untruthful. "So far from laying aside their own general knowledge and ideas," said Justice Field in Head v. Hargrave, "the jury should have applied that knowledge and those ideas to the matters of fact in evidence in determining the weight to be given to the opinions expressed; and it was only in that way that they could arrive at a just conclusion. While they cannot act in any case upon particular facts material to its disposition resting in their private knowledge, but should be governed by the evidence adduced, they may, and to act intelligently they must, judge of the weight and force of that evidence by their own general knowledge of the subject of inquiry." This part of the charge was erroneous, also, in assuming that, if the mill of the defendant "was constructed in the customary man-

ner of all the mills" in that region, the fact was conclusive against the allegation of negligent or defective construction. While proof of the like construction of other mills was competent evidence upon the question, obviously it was not conclusive. Common sense and reason do not lose their sway because, through ignorance, inattention, or selfishness, unreasonable customs may have prevailed.

In view of the fact that there must be another trial of the case it may be well to refer to some other questions, though not properly presented for review.

In respect to the question of contributory negligence, the charge of the court strongly emphasized the idea that the hole was in plain sight, and interrogatively suggested that the plaintiff was bound to see it. The other side of the question (that the plaintiff was young and inexperienced, and claimed to have been theretofore ignorant of machinery and of mills and their construction; that he had never seen this mill before that day; that he had been at work little more than an hour before the accident, and, until within two or three minutes before, his work had been in a place from which the hole was not likely to have been observed; and that in the possible flurry of a new employment, with strangers whose language he did not understand, he might have failed to see what an experienced workman would have looked for) not only was not presented, but suggestions to the contrary were made, such as that it was part of his business to saw slabs there,—his principal business. His testimony was that he had done nothing at the slasher before he was hurt. He was not at that business when he was hurt, and, if in fact he had done nothing at it, he was not chargeable with the knowledge which such experience would have brought him.

On the subject of independent contractor, the court gave to the jury, at the request of the plaintiff, a number of propositions, including this: That, "whatever the relation was between the defendant and the plaintiff, the defendant's duty was to warn the plaintiff of any dangers incident to his place of work which the defendant knew or ought to have known, and of which he was not justified in assuming the plaintiff was aware." At the request of the defendant the court instructed that if Barber was an independent contractor, and the plaintiff was in his employ, and the defendant was guilty of no negligence in failing to guard and to light the hole, then Barber alone was responsible for any neglect to inform the plaintiff of the hazards of the place where he was set to work. And this, in substance, was repeated in court's own words. The defendant also asked a specific instruction that from the written contract between the defendant and Barber, and the further evidence in relation thereto, it appeared that Barber was an independent contractor at the time the plaintiff was injured; but, upon reading that part of the request, the court said: "I do not wish to give that in the language it is. I want to submit that as a matter of fact to the jury, to say from all the evidence whether that was so or not." No definition of "independent contractor" was given, and no instruction to guide the jury to an understand-

ing of what was meant thereby. To what extent the owners of such mills or of other manufacturing establishments, in which there are machines or places about which the employé is exposed to special dangers, may escape responsibility to the workman, who gets hurt, by the interposition of an independent (and it may be irresponsible) contractor, is evidently a question of far-reaching consequences. Two cases are cited in the brief for the defendant in error in justification of the position asserted: Rolling Mill v. Cooper, 131 Ind. 363, 30 N. E. 294, and Reier v. Springs Works, 109 Mich. 244, 67 N. W. 120. Neither of these cases, however, will be found to be fully in point. Cooper was employed by one who had contracted with the mill company to heat and deliver scrap iron at the squeezer, by which it was to be squeezed before delivery to the rollers by which it was to be rolled into bars. In placing the iron in the furnace, taking it out, delivering it at the squeezer, and in removing the slag and cinders, the contractor needed assistance; and, one of his regular helpers being ill, he employed the plaintiff, a youth of eighteen, and put him to carrying slag from the furnace. He dumped a quantity into a small pool of water, and there followed an explosion, from which he received serious and permanent injury. It is not perceived that the case was different from what it would have been if the contractor had undertaken only to remove the slag, and had employed the boy to assist him in doing that work; and, if the mill company was liable for the injury, why would it not have been liable if it had contracted with a teamster or truckman to do hauling about the mill, and a boy in his employ should have been injured by reason of a defect in his wagon or trucks, or by the bite or kick of a vicious horse, against which he was not warned? Wood v. Cobb, 13 Allen, 58. The decision was placed by the court upon the principle, stated to be well settled, "that where one lets a contract to another to do a particular work, reserving to himself no control over such work except the right to require it to conform to a particular standard when completed, he is not liable for the negligence of the party to whom the contract is let." The following cases were cited, but they and the cases therein cited will be found to have no bearing upon the present question, except, perhaps, as they afford interesting illustrations of the application of the doctrine of respondeat superior: Water-Supply Co. v. White, 124 Ind. 376, 24 N. E. 747; Railway Co. v. Farver, 111 Ind. 195, 12 N. E. 296, 60 Am. Rep. 696; Ryan v. Curran, 64 Ind. 345, 31 Am. Rep. 123; Blake v. Ferris, 5 N. Y. 48, 55 Am. Dec. 304; Pack v. Mayor, etc., 8 N. Y. 222; King v. Railroad Co., 66 N. Y. 181, 23 Am. Rep. 37; Town of Pierrepont v. Loveless, 72 N. Y. 211. In the Reier Case, the plaintiff, a fifteen year old boy, was hurt by the bursting of an emery wheel at which he was engaged. "The declaration was based upon the existence of the relation of master and servant," and charged negligence of the master in placing the plaintiff, inexperienced, at dangerous work, without warning or instruction. The plaintiff himself testified that he was not in the employ of the defendant, but of a contractor, to whom, as the

proof showed, the defendant furnished the building, tools, and machinery with which to perform the work contracted. The opinion of the court was that, "if it was negligence to set the plaintiff at this work, * * * the contractor alone was at fault"; and the dictum was added that "the defendant, upon a proper declaration, could be held liable only for failure to furnish suitable machinery, and to keep it in proper repair, provided it was its duty to do so upon sufficient notice." The present case is broadly distinguishable. The defendant here was engaged in the general operation of its own mill. Owning the mill and machinery, it had possession, and, in a general sense, control, of all operations and work carried on. The slasher belonged to the defendant, and its sole use was to cut slabs and other like material belonging to the defendant into proper lengths for shingles, lath, and pickets, which, when cut, should belong to the defendant. The burden of keeping that machine in running order, the expense of oiling and repairing, remained with the defendant; the power to run it and the light to light it the defendant furnished; but it contracted with Barber to do the manual work necessary to operate the machine in cutting the material so furnished, giving him no authority to use it upon other material of his own, or for anybody other than the defendant; and for the doing of this manual work upon the defendant's machine and material, as directed by the defendant, the defendant agreed to pay him a price measured by the product. While nominally Barber was to employ and pay for such assistance as he needed, the wages of the helpers were paid by the defendant, and deducted from the amount which otherwise should have been due to Barber. Without undertaking to lay down lines for the decision of other cases, we have no hesitation in saying that upon the facts stated, and as they appear in this record, Barber was not an independent contractor, but a servant of the defendant, put in charge of a particular machine upon the terms stated, to operate it for the defendant, and that whatever duty there was to notify an inexperienced person engaged to work upon or about it of the dangers incident to the employment remained a duty of the defendant. The judgment below is reversed, with direction to grant a new trial.