Leary vs. Leary and wife.

ORTON, J., dissents.

LEARY, Respondent, vs. LEARY and wife, Appellants.

*March 25 — April 12, 1887.*

*(1, 2) Real party in interest: Title to note: Burden of proof. (3, 5) Evidence: Immaterial errors. (4) Newly discovered evidence: Opening case: Terms. (6) Payment: Evidence. (7, 10) Foreclosure of mortgage: Form of judgment: Lis pendens: Appeal: Bill of exceptions. (8, 9) New trial: Appeal: Evidence. (11) Parent and child: Board, etc., furnished. (12) Constable: Service of subpoena: Return: Presumption. (13) Costs: Witnesses: Affidavit: Reversal of judgment.*

1. A formal assignment of a note and mortgage, executed by the mortgagee in writing under seal, is ample proof of the assignee's legal title thereto, without proof of any consideration paid.

2. After the plaintiff in an action of foreclosure has shown a legal title in himself to the mortgage in suit, the burden of showing that he is not the real party in interest is upon the defendant.

3. The exclusion of proper evidence which, though admitted, would not, in the absence of other evidence, have established the fact sought to be proved, is not sufficient ground for reversing the judgment.

4. The court before which an action has been tried without a jury may properly, even after the case has been submitted and its decision has been announced, open the case for further evidence, if it appears that new and material evidence has been discovered by the defeated party since the submission; and this it may do without imposing terms.

5. The admission of improper evidence against objection, in a case tried by the court, is not sufficient ground for reversing the judgment if, upon the whole record, independent thereof, the findings of the court are sustained.

6. The evidence in this case (stated in the opinion) is held to sustain the findings of the trial court that the note and mortgage in suit had not been paid.

7. A judgment of foreclosure will not be reversed for irregularity merely because it provides that the plaintiff may have execution for any deficiency after a sale of the mortgaged premises. Such a provision, not stating against whom the execution is to issue, may be construed to mean that the plaintiff may have a judgment for deficiency against the persons liable therefor.

8. A motion for a new trial, made after the term at which judgment was entered, cannot be reviewed on appeal from such judgment.

9. *It seems* that it would not be an abuse of discretion to refuse to grant a new trial upon the strength of any statement made by a witness who is in his dotage, though contradictory of his testimony at the trial.

10. The fact that the bill of exceptions does not contain the proof of the filing of the notice of *lis pendens* in an action to foreclose a mortgage, is not ground for reversing the judgment, especially where the fact of such filing is found by the court and the judgment recites the fact and that there was due proof thereof.

11. In the absence of any agreement by a father to pay for board, lodging, and washing while living with his son as a member of his family, the latter cannot recover payment therefor.

12. The return of a constable upon a subpœna issued out of the circuit court is presumptive evidence that it was served as therein stated, and that the charges therein are proper.

13. The affidavit of the attendance of witnesses stated that they had traveled a certain number of miles. The court, in taxing the costs on appeal from the clerk, allowed for twice that number of miles. On appeal, there being no pretense that witnesses did not in fact travel the number of miles allowed for, this court declines to reverse the judgment.

APPEAL from the Circuit Court for *Brown* County.

The case is sufficiently stated in the opinion.

*W. J. Lander*, for the appellants, contended that the plaintiff had failed to show that he was the real party in interest, as he was bound to do. *Getzlaff v. Seliger*, 43 Wis. 302. There being no express trust, he could not sue as trustee. *Kimball v. Spicer*, 12 Wis. 668; *Robbins v. Deverill*, 20 id. 142; *Carpenter v. Tatro*, 36 id. 297; *Tate v. O. & M. R. Co.* 10 Ind. 174; *Conyngham v. Smith*, 16 Iowa, 471. A new trial ought not to have been granted, the newly discovered evidence being merely cumulative, and the plaintiff not having shown diligence. *Edmister v. Garrison*, 18 Wis. 603; *Russell v. Loomis*, 43 id. 545; *Jalie v. Cardinal*, 35 id. 118; *Herman v. Mason*, 37 id. 273; *Wilson v. Plank*, 41 id. 94. Or, if granted at all, it should have been upon terms. *Carroll v. More*, 30 Wis. 574; *State ex rel. Voight v. Hœflinger*, 33 id. 594. The record does not show a filing of the notice of *lis pendens* at or before the entry of judgment. *Haney v. Clark*, 1 Pin. 301; *Manning v. McClurg*, 14 Wis. 350; *Spraggon v. McGreer*, id. 475; *Catlin v. Pedrick*, 17 id. 88; *Webb v. Meloy*, 32 id. 319; *Sage v. McLaughlin*, 34 id. 550; *Mitchell v. Rolison*, 52 id. 155.

For the respondent there was a brief by *Hudd & Wigman*, and oral argument by *Mr. Hudd*.

TAYLOR, J. This action was brought to foreclose a mortgage given by *Daniel Leary* and wife to Cornelius Leary, father of *Daniel Leary*, to secure the payment of $400 and

interest. A promissory note was given by *Daniel Leary* for the $400, interest at five per cent. The note and mortgage were dated January 1, 1872; the note became due January 1, 1878. The note and mortgage were assigned by the mortgagee, Cornelius Leary, to the respondent, his son, *James Leary*. The mortgage and note were given by *Daniel Leary* to his father in part payment for 160 acres of land conveyed by Cornelius to him.

The answer admits the giving of the note and mortgage and the recording of the same as alleged in the complaint; denies that the note and mortgage were sold, conveyed, or assigned to the plaintiff by said Cornelius Leary; denies that *James Leary* owns the note and mortgage; and alleges that Cornelius Leary is the real party in interest. The answer then alleges full payment of the note and mortgage to Cornelius Leary before the same was assigned to the said *James Leary*, and that said plaintiff had full knowledge of such payment before the same was assigned to him. The answer also alleges a tender of $30 before suit brought, in full payment of the amount remaining unpaid on the note and mortgage. The answer also set up a setoff or counterclaim for board, washing, goods sold, and money loaned, amounting to $700. The case was tried by the court. The main contest on the trial was upon the answer of payment. When the evidence was first closed, the judge found in favor of the defendants that the note and mortgage was fully paid, but, before judgment was entered in the case upon such findings, upon the motion of the plaintiff and upon affidavits showing newly discovered evidence on the part of the plaintiff, the judge ordered that the case be opened for the receipt of further evidence, and thereafter further evidence was received on behalf of both parties, and the court then found in favor of the plaintiff for the whole sum of $400, and interest $270, and ordered judgment of foreclosure for the whole sum of $670 and costs of the action.

Exceptions were duly taken to the findings of fact and conclusions of law by the defendants, and from the judgment entered the defendants appealed to this court.

The first error assigned is that the plaintiff did not sufficiently prove his title to the note and mortgage. The plaintiff produced in evidence a regular and formal assignment in writing, under seal, of the note and mortgage, and had the same in his possession on the trial. This was ample proof of his right and title to the same, and it was wholly immaterial to the defendant whether he paid money or any other consideration for the same. The assignment was in itself proof of a transfer of the legal title to the note and mortgage; and as in this case there was no claim that the note and mortgage were transferred before the note was due and without notice of defendants' claim of payment and setoff, the defendant could not be injured by having the mortgage foreclosed in the name of *James*. After the plaintiff had shown a legal title in himself, the burden of showing that the action was not brought by the real party in interest was upon the defendant. We find no proof in the case tending to establish that issue in favor of the defendant. The only evidence offered which could be claimed to be at all material on that issue was the offer to show that no money was paid by *James* for the assignment. Had this evidence been admitted it would not have established the fact that the action was not brought by the real party in interest; and as no other evidence was offered on that issue, the judgment should not be reversed, even though the evidence offered would have been competent had it been followed by other evidence tending to show that the plaintiff was a mere nominal party, and not the real party in interest.

It is alleged that the court erred in granting the plaintiff a new trial on account of newly discovered evidence. The court did not grant a new trial. After having announced

Leary vs. Leary and wife.

his opinion upon the evidence as it stood when the case was first submitted for his decision, he opened the case for further evidence, upon motion of the plaintiff showing that he had discovered other and material evidence for the plaintiff since the case had been submitted. As the case stood when it was submitted, there can be no doubt that the new evidence was material to the plaintiff's case, and in an evenly-balanced case might be decisive in his favor. We think the court was justified in opening the case for further evidence. The objection that it should have been upon terms of paying costs can have no weight in a case of this kind. It is not like granting a new trial after the verdict of a jury, when all the expense of a new trial is necessary. Here there was no expense placed upon the defendant in opening the case, except the expense of defending against the new evidence which might be produced. He was not put to the expense of producing his witnesses, already examined, again in court for re-examination. There was no error, therefore, in refusing to give the defendant costs on the opening of the case for further evidence.

There are several exceptions taken to the admission of evidence against the objections of the defendant. Without referring to them specifically, we think the objections made were all properly overruled by the court; but had the court received improper evidence against the defendant's objections, still, in a case tried by the court, the reception of such evidence would not be sufficient to reverse the judgment, if upon the whole record, and independent of such improperly received evidence, the findings of the court were sustained.

The real contention of the appellants is that, upon the whole evidence, the court erred in not finding that the note and mortgage were wholly paid by the defendant before the action was commenced, or, if not fully paid, that the tender of $30 covered the whole sum due and more. The mort-

gagee, Cornelius Leary, was a very old man. At the time of the trial he was nearly or quite blind, and between eighty-four and eighty-five years old, ignorant, and entirely unable to write his name. The defendants produced on the trial receipts for the payment of all the money due on the mortgage for both principal and interest, except $10, and also a paper agreeing that the mortgage debt was settled and paid in full, and that the mortgagee would in a few days bring it to Green Bay and have it discharged. These receipts and agreement were all signed, "CORNELIUS X LEARY," and the defendant and his wife each swore that the money was paid to Cornelius at the date of the receipts, and that he made his mark to each receipt as well as to the settlement. The payment of $250 principal, and $20 interest, December, 1877, was also sworn to by the defendant and his wife and Mrs. Flaherty, a sister of *Mrs. Leary*. The payment of $147.50 was testified to by Kate Leary, a daughter of the defendant, and Katie Flaherty, a niece, and Michael Corrigan, a brother-in-law, of the defendant. They also testify that the receipt and agreement to cancel the mortgage was written by Katie Flaherty. The witness Katie Flaherty was about twelve years old when this receipt bears date, and the witness Kate Leary about thirteen years old at that time; being fifteen and sixteen years old, respectively, on the trial. *Mrs. Leary* and her husband testified that several of the payments, at least five in number, were indorsed upon the note at the time the payments were made, and that the other payments were not indorsed because the father said he had lost the note, or did not have it with him. All payments were claimed to have been paid at the defendants' house, and while Cornelius was living with them in the family. It was claimed that one Michael Smith was present when the $270 was paid, and drew the receipt for that sum, and that he was dead at the time of

the trial; that one Lemuel Jenkins or Jenkson drew a receipt for a $20 payment made in 1876, and at first the defendant and his wife both testified that this man was also dead, and died in Wrightstown. Afterwards, when it was shown that the Lemuel Jenkins or Jenkson, who died at Wrightstown, was unable to write even his own name, they testified that it was another man of a similar name who wrote the receipt, and they did not know where he was, or whether he was dead or alive.

On the part of the plaintiff it was shown, first, that the note had no indorsements on it of any kind; that the defendant *Daniel Leary* had frequently admitted that he owed his father the amount of the mortgage long after he claimed on the trial to have paid it in full. There was also evidence given on the trial showing that defendant had procured a satisfaction of the mortgage to be drawn up, and called a justice of the peace to have the same executed by the father, and that the father refused to execute the same, claiming that it never had been paid. There was also evidence tending to show that the persons who it was claimed wrote the receipts produced in evidence, did not write them. The father denied that any payment had been made on the mortgage. Upon this testimony, and other circumstances not here stated, but appearing on the record, the learned circuit judge came to the conclusion that no payments had ever been made on the mortgage.

It is evident that the judgment of the court was the result of his judgment as to the credibility of the witnesses who testified in the case. This court is in no position to criticize the judgment of the learned trial judge for his decision upon a question of that kind. His opportunities for judging of the truthfulness of the witnesses who were examined in his presence, are manifestly so much greater than we have from reading the written record that it would be unsafe to reverse the decision of the trial judge upon a

question of this kind. We might, with equal propriety, re-verse the verdict of the jury, which is clearly based upon the credibility which one or the other set of witnesses on the trial should receive. Though there is a mass of evidence given on the part of the defendant to sustain his claim of payment, yet there are attending circumstances which cast grave doubts upon its truthfulness, and tend strongly to the conclusion that most of it was prepared to make a defense to the action, rather than as a truthful statement of the real facts of the case. At all events, the judgment of the circuit judge who tried the case must be upheld by this court, in the absence of a strong preponderance of the evidence against its correctness, and we do not think that there is any such preponderance in this case.

There is nothing in the form of the judgment which should work its reversal. The order of the court directed the usual judgment of foreclosure and sale of the mortgaged premises to satisfy the amount found due, with costs of the action and of the sale, and also a judgment for deficiency if there should be any.

It is insisted the judgment is irregular because it provides that the plaintiff have execution for any deficiency there may be after sale of the mortgaged premises. If the plaintiff should undertake to issue an execution for such deficiency, without first obtaining an order therefor as provided by sec. 3156, R. S., we think the defendant could amply protect himself by a motion to set aside such execution. The order in the judgment that the plaintiff have execution for the deficiency, without stating against whom the execution shall issue, may well be construed to mean that he shall have judgment for such deficiency against the persons liable therefor, as provided in said section. *Huse v. Washburn,* 59 Wis. 414; *Crocker v. Currier,* 65 Wis. 662.

The motion for a new trial made by the defendant after the term at which judgment was entered, cannot be re-

viewed on appeal from the judgment. *Latimer v. Morrain,* 43 Wis. 107; *Weis v. Schoerner,* 53 Wis. 72; *Morris v. Niles,* 67 Wis. 341. Had the motion been made in time, we think the learned circuit judge would have been justified in refusing to grant it on the changed statement of the old man Cornelius Leary. His evidence given on the trial shows that he was in his dotage, and hardly competent to testify as a witness. We think it improbable that, in the original determination of the case, any considerable weight was given by the learned circuit judge to his evidence, and certainly it was not an abuse of discretion on the part of the judge to refuse to grant a new trial on the strength of any statement he might make in regard to the matter. *Loucheine v. Strouse,* 49 Wis. 623.

The objection that there was no proof of the filing of the *lis pendens* before the court is not sustained by the record. The judge says in his findings of fact that the *lis pendens* was filed, and the judgment not only recites the same fact, but it also recites that due proof of such filing was made. *Mitchell v. Rolison,* 52 Wis. 155; *Sage v. McLaughlin,* 34 Wis. 550; *Webb v. Meloy,* 32 Wis. 319, 324. In this last case it is expressly held that, because the bill of exceptions does not contain the proof of the filing of the *lis pendens,* is no reason for reversing the judgment. This proof need not be given on the trial or be made a part of the bill of exceptions.

It is further insisted by the counsel for the appellants that the court erred in not allowing the defendants' setoff. The only proof of setoff was the evidence of the defendant *Daniel* that he had boarded, lodged, and washed for his father for several years, while his father was living with him. He does not state that there was any agreement, either express or implied, between him and his father that he should have pay for such board, lodging, and washing. In the absence of any such agreement, this court has repeatedly held

that he could not recover for such board, etc. For all that appears from the evidence, the father lived with his son as a member of his family; and there was no contract between them as to the payment of board, etc., by the father. It it unnecessary to cite authorities to show that the evidence was not sufficient to charge the father with his board, lodging, and washing. The defendant testified to having furnished his father with $2.25 in money, and $3.50 in clothes, and tobacco which he says amounted to $50, but he does not pretend that any account was kept of the same. The father denies that he ever let him have tobacco, but admits that he had the $2.25, and the $3.50 for clothes. These clothes the court might well hold were a gift from the son to his father, as well as the $2.25 given to him when he left his house. As to the tobacco there is hardly sufficient evidence to base a finding upon. We think there was no error committed by the court in refusing, under all the evidence, to allow the defendants these claims. It is, we think, evident that when this money, the clothes, and tobacco were given to the father, if any was given, there was no intention of considering it a debt due from him, any more than there was for considering him liable to pay his son for his board, lodging, etc.

The appellant further insists that the court erred in not striking from the plaintiff's bill of costs certain items charged as fees of his witnesses, and one item for subpœnaing such witnesses. The items were objected to before the clerk, and on his refusal to strike them out the defendant appealed to the court. On such appeal the court struck out a few items which were clearly overcharges, as appeared on the face of the papers, but refused to strike out the charges for the witnesses' fees and for subpœnaing them. It will appear from the objections made before the clerk as well as before the court, that the motion to disallow the claims objected to was not based upon the allegation that the service

of the subpœna was not performed as charged by the officer, nor that the witnesses' fees paid were not properly chargeable in the case, but on the sole ground that the service of the subpœna and the mileage of the witnesses as taxed were not sufficiently proved by the plaintiff. In the absence of proof to the contrary, we think the return of the constable on the subpœna was evidence of its service and of the officer's fees for serving the same. A constable may serve a subpœna issued out of the circuit court (see sec. 4055, R. S.); and is entitled to the same fees for the service thereof as if served by a sheriff (see sec. 2959, R. S.; *Cutts v. Rock Co.* 58 Wis. 641, 644). The return of a constable to any writ is presumptive evidence that such return is correct; that the service has been rendered or disbursements made. Sec. 3780, R. S. By sec. 2928, R. S., it is also provided that the disbursements of officers for services rendered need not be proven by the affidavit of any one in order to have them taxed. Without some affirmative evidence showing that the charge for serving the subpœna was too much, there was no error in taxing the same.

The charges for witnesses' fees were also properly taxed. The only objection made to taxing the respective sums at which the court and clerk taxed them is that the affidavit of the plaintiff's attorney does not show that they traveled the number of miles in attending as such witnesses taxed in each case. The affidavit says, in general terms, that each witness named in the bill of costs attended the trial of the cause the number of days charged, and traveled the number of miles indicated in said bill. At four cents per mile, the court taxed for just twice the number of miles stated in the bill. In construing the affidavit, the court undoubtedly understood it to mean the number of miles stated as traveled in coming to the place of trial; and as the witness is entitled to travel in returning as well as in coming to the place of trial, the taxation was correct. We may take it for

granted that the judge had some personal knowledge of the residences of the witnesses, and that he construed the affidavit in the light of such knowledge. At all events, we are not inclined to reverse the judgment because, upon a strict construction of the proof of the attendance and travel of the plaintiff's witnesses, a few dollars too much was taxed, when there is no evidence, and no pretense even, that the witnesses did not in fact travel the number of miles for which they received pay by the taxed bill. So far as appears from the record, no injustice has been done to the defendant in the matter of the taxation of costs. *Meyer v. Foster*, 16 Wis. 294; *Fuller v. Wilcox*, 19 Wend. 351.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 32 N. W. Rep. 624.— REP.