CAMPBELL, for Use, etc., v. EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES.

(Circuit Court, E. D. Pennsylvania. May 28, 1904.)

No. 21.

1. REFERENCE—REVIEW OF FINDINGS—EFFECT OF STIPULATION.

Under an agreement that findings of fact made by a referee shall have the same force and effect as the verdict of a jury, such findings cannot be reviewed by the court on exceptions.

2. CONTRACTS—CONSTRUCTION—RIGHTS OF ASSIGNEE.

A provision of a contract between a life insurance society and an agent that "the said society may offset against any claims for commissions under this contract any debt or debts due at any time by the said party of the second part to the society" construed, and *held* to apply only to such debts as arose out of the relation created by such contract, and not to entitle the society to offset against renewal premiums due thereunder

advances made to the agent after the relation had ceased, and the agent's rights under the contract had been assigned to a third person, of which the society had notice.

At Law. On exceptions to report of referee.

Wm. A. Manderson, for plaintiff.

Thomas De Witt Cuyler, for defendant.

J. B. McPHERSON, District Judge. As the agreement of reference in this case provides that the referee's findings of fact "shall have the same force and effect as the verdict of a jury," I do not see how I can review them. Apparently, it is only "his rulings on the admission or rejection of testimony and his conclusions of law" that are "reviewable on exceptions by the United States Circuit Court," and therefore, as I understand the agreement, his findings of fact are not the subject of exception at all. This being so, there seems to be little left for controversy. The referee's finding establishes the fact that the defendant had notice in September, 1890, before the advances were made to Campbell that are the subject of the suit, that Campbell had assigned his interest in the contract to Scott, and the authorities are clear that advances after such notice were made at the defendant's own risk. After receiving notice that Scott had become the owner of the contract, it could not create a distinct and separate indebtedness against Campbell, and charge it against what had now become Scott's property. For example, it could not lend Campbell the money to buy a house, and repay the loan out of future commissions.

The defendant agrees that this proposition is sound as a general rule, but argues that the first contract, which was made in 1886, when Campbell was first employed as its agent, contains a clause that justifies the course which has been pursued. The clause is as follows:

"It is further understood and agreed that the said Society may offset against any claims for commissions under this contract, any debt or debts due at any time by the said party of the second part [Campbell] to the Society."

These words are, no doubt, comprehensive enough to bear the construction contended for by the defendant, but I think that other considerations lead properly to the conclusion that they should be confined to debts that might arise out of the relation created by the contract of 1886. The sum now in question was advanced to Campbell in 1891, when he returned to the defendant's service as an agent (having been employed by another company for the previous year), and entered upon a wholly new and separate contract, having no connection with and no relation to the contract of 1886. Now, it is clear that the clause above quoted is also capable of bearing the meaning that the debt or debts which may be "due at any time" are only such as may arise under the particular agreement that was then being made; and, as this is the meaning least favorable to the company, a well-established rule of construction requires that it should be adopted, for the contract is the company's own agreement upon its printed form, prepared evidently with great care, and

what it does not clearly express is not to be read into it by implication. If the clause had been intended to cover debts of any kind which might become due from Campbell to the company, no matter of what nature, during the whole period in which the company should be bound to pay his commission on renewal premiums, words to that effect would naturally have been inserted, for the contract was expected to run for more than 20 years. This commission upon renewals was to be paid during that period, whether Campbell was alive or dead, and contingencies were evidently being provided against which might arise during this long period. I think, therefore, that the ambiguity of the clause, considered in connection with the circumstances surrounding the execution of the contract, should be resolved in favor of the plaintiff's view of its meaning, and that the clause must be construed to refer simply to obligations into which Campbell might enter to the company, growing out of that particular agreement.

And this conclusion is strengthened by observing that, when the contract of 1891 was entered into, an identical clause was inserted in that contract also. This was certainly a superfluous precaution, if by the contract of 1886 the company already had the right to charge against Campbell's commissions any debt that he might thereafter owe to the company, no matter how it might arise, or for what purpose it might be created. Without prolonging the discussion, I am of opinion that the conclusion of the learned referee was correct, and that the defendant, having charged up against Campbell's account the sums advanced to him under the contract of 1891, must repay them to the equitable plaintiff.

The proper judgment may therefore be entered in favor of the plaintiff, with costs of suit.