## JAHN v. CHAMPAGNE LUMBER CO. et al.

### (Circuit Court, W. D. Wisconsin. January 14, 1908.)

### No. 124.

1. CREDITORS' SUITS—STATE STATUTE EXTENDING REMEDY—ENFORCEMENT IN FEDERAL COURT.

   St. Wis. 1898, § 3029, which authorizes the filing of a creditors' bill upon every judgment for the payment of money after an execution has been returned nulla bona whether the original cause of action was in contract or tort, gives a remedy which will be administered by the federal courts.

2. SAME—CORPORATIONS—DISTRIBUTION OF ASSETS AMONG STOCKHOLDERS.

   Where all the property of a corporation has been sold and the proceeds distributed to stockholders, such proceeds constitute in their hands a trust fund for the payment of the debts of the corporation which may be reached by a creditors' bill, whether the distribution was actually fraudulent or not.

3. SAME—DEFENSES—SUIT BY ASSIGNEE OF JUDGMENT.

   In a creditors' suit by an assignee of a judgment against a corporation, which has ceased to be a going concern, to reach its assets in the hands of stockholders to whom they have been distributed, it is not a defense that the assignment of the cause of action which then rested in ver-

dict after a fourth trial of the cause was in consideration of a small payment by complainant and of other sums previously advanced by him to assist the plaintiff in the cause in carrying on the litigation, nor that such plaintiff was so financially exhausted by the litigation that, but for the assignment, no further action would have been taken to obtain or enforce a final judgment, neither of which facts raises any equities in favor of defendants, or renders the enforcement of the judgment unconscionable.

4. SAME—IMPEACHMENT OF JUDGMENT—COLLATERAL ATTACK.
      Nor does an averment in the answer in such suit that the judgment against the corporation was procured by means of the perjured testimony of the plaintiff therein state a defense, such averment of perjury being merely a conclusion of law, and, if true, having no relation to any extrinsic or collateral fraud for which alone a court of equity could enjoin the collection of the judgment even in a direct proceeding therefor.

5. EQUITY—PLEADING—GENERAL AVERMENTS.
      Vague averments on information and belief and deductions of the pleader cannot properly be accepted in an equity pleading as a substitute for facts which are within the pleader's knowledge, and which would enable the court to arrive at an intelligent conclusion.
      [Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 323, 337.]

6. CHAMPERTY AND MAINTENANCE—ACTS CONSTITUTING—AIDING LITIGANT.
      To give financial aid to a poor suitor who is prosecuting a meritorious cause of action does not constitute maintenance, in the absence of any bargain to share the recovery, and is not violative of law or public policy.
      [Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Champerty and Maintenance, §§ 3–8.]

In Equity. Hearing on bill and answer.
See 152 Fed. 669.

This is a bill in equity, in the nature of a creditors' bill, filed by Herman F. Jahn as assignee of John Nyback, against the Champagne Lumber Company, a Wisconsin corporation, Alexander Stewart, and Walter Alexander, the principal stockholders of said corporation, and the only stockholders thereof resident within the state of Wisconsin.

The bill sets out, in substance, that the defendant corporation was on the 12th day of July, 1892, operating a certain sawmill located at the city of Merrill, in the state of Wisconsin, and engaged in the manufacture of lumber and other like products; that on or about said date Nyback, while employed by defendant in such mill, received serious bodily injuries as the result of the negligence of the defendant corporation; that about April 27, 1896, Nyback commenced suit at law against said corporation in this court to recover damages for such injuries; that the suit was prosecuted with varying results, until on the 26th day of July, 1901, when, pursuant to the mandate of the United States Circuit Court of Appeals for the Seventh Circuit, judgment for costs was entered in favor of Nyback against the defendant corporation in the sum of $471.29; that execution was duly issued to the United States marshal, and was returned nulla bona; that thereafter, on the 26th day of February, 1903, a verdict was rendered in the cause in the Circuit Court in favor of Nyback against the defending corporation for $2,000 damages; that thereafter the judgment was affirmed by the Circuit Court of Appeals for the Seventh Circuit; that on the 12th day of March, 1903, Nyback assigned and transferred to the complainant by written assignment under seal all his right, title, and interest in and to the judgment and verdict; that final judgment having been entered on the verdict for $2,067.65, execution was duly issued to the United States marshal of this district; that the same was returned nulla bona; that the several judgments, amounting to $2,566.98, remain unpaid, unreversed, and in full force and effect.

The bill further avers that the defendant corporation owned and possessed a large quantity of valuable property, consisting of lands, goods, chattels, choses in action, and effects of great value, more than enough to pay said

judgments and all the claims then existing against said corporation; that, while such litigation was in progress, the defendants Stewart and Alexander, as officers of the defending corporation, sold and disposed of all of the property of the corporation, both real and personal, and converted the proceeds to their own use, so that the corporation, although entirely solvent, was deprived of all tangible property upon which an execution could be levied, and was left in a state of suspension, and ceased to be a going concern, in which condition it still remains; that such conversion of the assets of the corporation by the defendants Stewart and Alexander was fraudulent, and was resorted to for the purpose of removing all the assets of said corporation beyond the reach of any execution that might be issued upon the judgment; and that the proceeds of such property remain in the hands of defendants Stewart and Alexander as a trust fund for the payment of the debts of the corporation; that complainant is entitled to an equitable lien upon such fund; and that Stewart and Alexander own a large majority of the shares of the capital stock of said corporation. The bill prays for a full discovery as to the amount of the assets remaining in the hands of said defendants Stewart and Alexander. The bill was brought also in behalf of any other creditors of said corporation who might join in the suit.

The defendants by joint and several answer admit the organization and purposes of the defendant corporation, and that the defendants Stewart and Alexander are the only stockholders of said corporation residing within the jurisdiction of the court. They also admit the rendition of the several judgments at law, and the issuance of the several executions and the return thereof as alleged in the bill; also, that there are no existing claims against the defending corporation, except only the judgments mentioned in the bill of complaint. No discovery having been made by the answer, it was conceded on the argument that the amount of money in the hands of the defendants Stewart and Alexander, derived from the sale of such corporate assets, was more than enough to liquidate such judgments. They allege that the disposition of the assets of the defendant corporation by defendants Stewart and Alexander occurred pursuant to a general purpose of the corporation to gradually close out its business, and to make no further investments in logs and timber; that, as fast as the assets were converted into cash, they were divided by common consent, by means of dividend or otherwise, equitably and in proper proportions among the stockholders solely for the purpose of winding up its business, and deny any fraudulent purpose in the premises. The answer also contains the following averments:

"(3) These defendants allege that up to the time the affairs of the said Champagne Lumber Company were wound up and the property and assets of said company divided among the stockholders, as aforesaid, the said John Nyback had been unable to recover any verdict or judgment against the said Champagne Lumber Company upon his alleged claim for damages against said company, and that the said John Nyback was unable to secure a verdict of a jury in his favor on said claim in his action in the Circuit Court of the United States for the Western District of Wisconsin until the fourth trial of said cause. Upon the first trial of said cause the jury disagreed, upon the second trial a verdict in favor of said Champagne Lumber Company was directed by the Honorable Romanzo Bunn, District Judge, presiding at said cause, and upon the third trial the cause was submitted to the jury and a verdict rendered in favor of the said Champagne Lumber Company, all of which matters and things the complainant herein well knew at the time of his purchase of the judgments aforesaid.

"(4) These defendants are informed, and believe and charge, the fact to be that at the time the said John Nyback obtained a final judgment against the Champagne Lumber Company he had not the means at hand nor at his command nor the ability nor the inclination nor the intention to further prosecute any action or proceedings to enforce the collection of said judgments, and that the complainant herein with full knowledge of the facts concerning such action, and with full knowledge that the said John Nyback could not and would not if let alone further prosecute any action on the said judgments to enforce the collection thereof, and with full knowledge that the Champagne Lumber Company had no assets from which said judgments could be collected, and for

the sole purpose of speculating upon the said judgments, solicited and obtained from said Nyback the written assignments and conveyances of the said judgments set forth in the bill of complaint.

"(5) These defendants are informed and believe, and charge the fact to be, that, notwithstanding the recitals in said assignment and conveyance, the complainant herein paid to the said Nyback only a small and inadequate consideration for the said judgments, not exceeding the sum of $15, while the said judgments at the time amounted to upwards of $3,000; that the said assignment was taken for the sole purpose of speculation and upon the chance of forcing a contribution from the various stockholders of the said defendant company.

"(6) These defendants admit the allegations contained in paragraph 2 of said complainant's bill of complaint, except that they deny that the injury received by the said John Nyback on the 12th day of July, A. D. 1892, was because of the negligence of the defendant, Champagne Lumber Company, in the manner and form alleged in the bill of complaint, and they deny that the said Champagne Lumber Company, or its agents, servants, or employés, were negligent in the manner and form alleged in the bill of complaint, and they deny that any negligence of the said Champagne Lumber Company, or its servants, agents, or employés, was a proximate cause of the injury received by the said John Nyback. They allege that the injury received by him was caused solely by his own negligence in failing to use reasonable care for his own protection.

"(7) Notwithstanding said verdict in the action in which said John Nyback was plaintiff and the said Champagne Lumber Company defendant, these defendants are informed and believe, and charge the fact to be, that the said verdict was obtained by the said John Nyback by the commission of perjury by the said John Nyback upon the trial of said action in the Circuit Court of the United States for the Western District of Wisconsin, in this, to wit: the said action was based on the legal proposition and alleged grounds of liability that said Champagne Lumber Company was negligent in maintaining and keeping unguarded adjacent to a place where the said Nyback was instructed to work a hole or chute, and in negligently failing to instruct the said Nyback as to his duties, and how to perform his work, and warn him against the dangers of falling into said hole and becoming injured thereby; that one of the defenses set up by the said Champagne Lumber Company was that the plaintiff Nyback was guilty of carelessness and negligence on his part which directly contributed to the injury received; that on the trial of the said action the said Nyback, being first duly sworn, testified that previous to his falling into the hole in question and receiving his injury he did not know of the existence of the hole, he had never seen the hole, he had never been instructed as to his duties, and he had never been warned against the dangers of falling into the said hole; whereas, in truth and in fact, one Eric I. Odegaard previous to his employment fully explained to him the nature of his duties and where and how to perform them, and instructed him how to perform them so that, if he followed the instructions, he would not have fallen into said hole and received his injury, and also told him about the hole, and told him to look out and not get into the hole himself; that at the time said Nyback gave his testimony on the said trial in which said judgment was obtained he knew that his testimony was false, and knew that the said Eric I. Odegaard could testify to the instructions and statements aforesaid; that, notwithstanding said knowledge, he deliberately perjured himself, and concealed from the court and the defendant, Champagne Lumber Company, the fact that the said Odegaard had given such instructions and such information, and that the said Odegaard could testify to that effect; that at the time the said action was commenced the said Odegaard had become involved in a quarrel with the manager of the said Champagne Lumber Company, and, when the Champagne Lumber Company's attorneys began to prepare for the trial of said action, on account of such quarrel, said Odegaard refused to disclose what he knew in regard to the transaction, and refused and failed to inform the Champagne Lumber Company, its officers, agents, and attorneys of the facts aforesaid, and threatened that, if he was forcibly compelled to attend and give evidence as a witness in the said action, he would give testimony that would injure and en-

danger the Champagne Lumber Company's Case, and that his testimony would not aid or benefit them, and refused to divulge or disclose any fact or evidence which was material to maintain the defense of said Champagne Lumber Company in the said action; that, by reason thereof and fully believing that no testimony existed to establish the facts known by the said Odegaard, the said Champagne Lumber Company did not obtain the testimony of the said Odegaard on any of the trials of said action; that there was no other witness by whom the Champagne Lumber Company could prove the facts within the knowledge of the said Odegaard, and no officer or agent of said company knew of such facts; that the Champagne Lumber Company and all of its officers and agents used due care and diligence, but was never able to ascertain the fact that the said Odegaard could or would, if placed under oath, testify to the facts aforesaid until after the verdict of the jury upon which final judgment was rendered in said action; that by mere accident after such verdict the said Champagne Lumber Company learned of the facts within the knowledge of the said Odegaard as aforesaid, and obtained the affidavit of the said Odegaard setting forth such facts, and that, if a new trial was had, said Odegaard would testify to such facts, and used said affidavit, together with other affidavits, to show diligence on the part of the defendant Champagne Lumber Company in support of the motion for new trial in the said action; that, on account of the strict rules in actions at law in said court, the trial court held that the said Champagne Lumber Company was not entitled as a matter of law to a new trial in the said action; that the said Nyback willfully and maliciously opposed the granting of a new trial with full knowledge on his part that the same had been procured by perjury as aforesaid; that, by reason of the facts aforesaid and the willful false swearing of the said Nyback, it would be inequitable for a court of equity to assist and aid in the enforcement of the collection of the said judgments from the individual defendants in this action; that the complainant herein was fully aware and cognizant of the act of the said John Nyback in committing perjury upon the trial of said action.

"(8) These defendants allege that the said John Nyback, for a good and sufficient consideration soon after the happening of the said injury, and at the time he was 18 years of age, released the said Champagne Lumber Company from all damages resulting from said injury, and that the said release was fair and entirely free from fraud, and that the complainant herein was fully aware of the execution of said release to the said Champagne Lumber Company. These defendants are informed and believe, and charge the fact to be, that the said John Nyback was entirely and fully satisfied with the settlement with the Champagne Lumber Company, and that he did not intend to make any other or further claim against it for damages because of the said injury, and that he would not of his own accord have begun the suit aforesaid in the Circuit Court of the United States for the Western District of Wisconsin. These defendants are informed and believe, and charge the fact to be, that the complainant herein, together with divers other persons unknown to these defendants, well knowing of the full and fair settlement made between the said John Nyback and the said Champagne Lumber Company, and that the said John Nyback did not intend to make any further claim for damages against the Champagne Lumber Company, and with the intention of promoting and stirring up litigation, induced the said John Nyback to begin suit against the Champagne Lumber Company, and that they furnished the said John Nyback with the means wherewith to carry on said suit against the Champagne Lumber Company, and paid for the said John Nyback the costs and expenses incurred in said suit.

"(9) These defendants are informed and believe, and charge the fact to be, that the complainant herein and the other persons associated with him in the stirring up of said litigation against the Champagne Lumber Company well knew that the said Champagne Lumber Company had made a full and fair settlement with the said John Nyback, and that the said Champagne Lumber Company did not expect that any action would thereafter be brought against it for said injury, and that the said Champagne Lumber Company was making no effort to preserve the evidence in its favor concerning such injury, or to keep track of witnesses who were familiar with said injury."

The complainant has set the case down for hearing on bill and answer.

The bill charged that the individual defendants were indebted to the corporation upon unpaid stock subscriptions, and prayed that such obligations might be treated as assets in case it should appear that the other assets of the corporation were not sufficient to liquidate all the debts of the company. This feature of the bill has been practically eliminated by two admissions of the defendants: First. That there are no other debts of the defendants. Second. That the assets in the hands of the defendants are sufficient to cover the amount of the judgments.

Therefore the scope of the inquiry is limited to the single proposition whether the court should require the defendants to pay these judgments out of the corporate funds held by them.

William T. Lennon (Julius J. Patek and Charles F. Button, of counsel), for complainant.

Reid, Smart & Curtis (John B. Sanborn, of counsel), for defendants.

QUARLES, District Judge (after stating the facts as above). It appears that on the 12th day of July, 1892, one John Nyback, then about 18 years of age, while working for the defendant corporation in its lumber mill, received serious bodily injuries resulting from the neglect of said defendant to furnish him a safe place in which to work. This case has a singular history. There have been four jury trials in this court, with varying results. Three times the case has been passed upon by the Circuit Court of Appeals. Some small part of the history of this lawsuit may be read in the following reports: Nyback v. Champagne Lumber Co., 90 Fed. 774, 33 C. C. A. 269; Id., 109 Fed. 732, 48 C. C. A. 632; Id. (C. C.) 130 Fed. 786; Champagne Lumber Co. v. Nyback, 130 Fed. 1021, 64 C. C. A. 615; Jahn v. Champagne Lumber Co. (C. C.) 147 Fed. 631; Jahn v. Champagne Lumber Co. (C. C.) 152 Fed. 669. Many of its epochs have not found their way into print. Thus many years were consumed in bitter litigation, which finally culminated in a verdict for the plaintiff for $2,000. By this time Nyback was exhausted and found himself unable to continue the fight longer for lack of means. It is true that he had a verdict, but the motion for a new trial was pending, likely to be hotly contested, and the defendant had already put its assets supposedly beyond reach. He therefore abandoned the field, and sold and transferred his judgment to the present complainant, who followed the case to the Circuit Court of Appeals and secured an affirmance of the judgment. An execution having been returned unsatisfied, this suit, in the nature of a creditors' bill, was brought on the chancery side of the court to enforce the judgments. Demurrer was interposed to the bill, which was overruled. Then pleas were substituted, which were held multifarious. Then a motion was made to amend the pleas, which motion was denied. Then the present answer was interposed, and finally the complainant has set the case down for hearing on bill and answer. It is elementary that by this course the complainant has practically admitted all new facts in the answer that are well pleaded, as would be the case if demurrer were interposed to an answer at common law. In re Sanford Co., 160 U. S. 259, 16 Sup. Ct. 291, 40 L. Ed. 414. The facts set out in the bill are accepted as true, except where traversed by the answer. Therefore the issues tendered by the answer may be summarized as follows:

First. That the judgment was purchased by the complainant for a small and inadequate consideration for the purpose of speculation, well knowing that the defendant corporation had no assets, and that Nyback, the original complainant, did not intend to prosecute the case further, but would have abandoned the same except for the intervention of the complainant.

Second. That the verdict was obtained by means of perjury committed by Nyback, and therefore the judgment ought not to be enforced in a court of equity at the instance of the complainant, who, for the purposes of this objection, stands in the shoes of Nyback.

Third. That, after the accident to Nyback, a fair settlement had been made with him by the defendant corporation. That the complainant and others induced Nyback to repudiate such settlement, and furnished Nyback with the means to carry on the litigation, and were therefore guilty of maintenance, and the complainant ought not on that account to receive the favorable regard of a court of equity.

Section 3029, Rev. St. Wis. 1898, allows the filing of a creditors' bill upon every judgment for the payment of money after an execution has been returned nulla bona, whether the original cause of action was in contract or in tort. Pierstoff v. Jorges, 86 Wis. 128, 137, 56 N. W. 735, 39 Am. St. Rep. 881. Such remedy will be administered by the federal courts. Re Broderick Will, 88 U. S. 503, 520, 22 L. Ed. 599; Reynolds v. Bank, 112 U. S. 405, 410, 5 Sup. Ct. 213, 28 L. Ed. 733; Foster's Fed. Pr. § 7. The defendants allege that the corporation died from natural causes, while the complainant contends that it was a case of corporate suicide to escape the sanctions of the law. For the purposes of this proceeding, the court is bound to accept the version of the defendant that no actual fraud was intended. The fact that the corporation is civilly dead is sufficient ground for invoking the trust-fund theory, whether the manipulation of the corporate assets involved actual fraud or not. The machinery of the law not being adequate to enforce the judgment, the aid of this court may be sought to enforce an equitable levy. Graham v. Railway, 102 U. S. 161, 26 L. Ed. 106. From the standpoint of the complainant, this would seem to be a plain and comprehensive view of the equitable situation; but under familiar rules the complainant upon this hearing is held to admit the truth of any new averment in the answer which is well pleaded. Therefore a careful analysis of the showing made by the answer becomes necessary.

A determined effort is made by the defendants to impeach the title of the complainant. It is said he paid an inadequate consideration for the assignment, and that it would be unconscionable, therefore, to grant him the relief demanded. The assignment in this case was in writing and under seal, and contains an irrevocable power of attorney to enter judgment, issue execution thereon, etc. It expresses a consideration of $15 this day paid, and "for other sufficient and valuable considerations heretofore received." Section 2906, Rev. St. Wis. 1898, provides that such an assignment of a judgment shall have the effect to transfer all the rights of the owner in such judgment. Defendant's counsel does not dispute the general rule that no third party may inquire into the consideration of such transfer further than to ascertain

whether the title passes, and enables the assignee to give a good discharge. 1 Beach, Modern Eq. Juris. § 345; 2 Story's Eq. Juris. (13th Ed.) 379; Leary v. Leary, 68 Wis. 662, 32 N. W. 623; Sheridan v. New York, 68 N. Y. 30; Chase v. Dodge, 111 Wis. 73, 86 N. W. 548. An effort is made to bring the case within the line of authorities where the complainant has by some unconscionable bargain acquired a cause of action for a trifling sum, and then invokes the aid of a court of equity to reap a rich harvest, under such circumstances as generally to work serious hardship to innocent stockholders or third parties. Three such authorities are Mississippi Ry. v. Cromwell, 91 U. S. 643, 23 L. Ed. 367, Jencks v. Quidnick Co., 135 U. S. 457,[1] and Hospes v. N. W. Manf'g Co., 48 Minn. 174, 50 N. W. 1117, 15 L. R. A. 470, 31 Am. St. Rep. 637. The Hospes Case is a fair sample of them all. An examination into the facts will show that it was a piratical raid made by a corporation that had bought up over a million dollars of claims against an insolvent corporation. The scheme was to enforce a supposed liability of stockholders upon certain bonus stock that had been gratuitously distributed among stockholders with the express understanding that such stockholders should not be required to pay for the same. Of course, a court of equity would not lend its aid to such base purposes. It requires only a careful examination of these authorities to see that they proceed upon a peculiar state of facts that are not present here, and render the doctrine wholly inapplicable. Here there was no unconscionable or fraudulent bargain, and no prize or windfall. This lawsuit was dear at any price, as the event has proven, and as might have been foretold without the gift of prophesy at the time when complainant bought the cause of action. Detached excerpts from the language of these opinions may be strung together like beads in such a way as to give an erroneous idea of what was actually decided by the courts. The language of an opinion is an uncertain guide when divorced from the facts.

Neither is this case ruled by the doctrine that, where the assignor has nothing to part with but a naked right to sue for equitable relief, public policy is violated by an assignment of such supposed right. It has been often held that the assignee in such a case, having bought only a hostile right to pursue somebody in equity, will not be aided by the court. The distinction is clearly drawn by the Supreme Court of Wisconsin in Bennett v. Keehn, 57 Wis. 582, 592, 15 N. W. 776. The court cite with approval from the opinion of Lord Romilly in Prossers v. Edmunds, 1 Younge & C. 481, as follows:

"Where a valuable consideration has passed and the party is put in possession of that which he might acquire without litigation, there courts of equity will allow the assignee to stand in the right of the assignor."

The Wisconsin court continue:

"The answer does not expressly state the consideration paid by the appellant, * * * but all of the averments of the answer bearing upon the subject go to negative the theory that the conveyances may have been mere gifts. It would have been better and safer pleading to have stated the consideration, but we are inclined to hold it fairly inferable from the answer that a valuable consideration was paid for such conveyance. We think this construction best accords with the liberal rule in that behalf which now prevails."

---

[1] 10 Sup. Ct. 655, 34 L. Ed. 200.

In the instant case the purchase involved a final judgment for $471 against the corporation, and another cause of action then resting in verdict. These causes of action have survived all tests. It is therefore clear that complainant as assignee of Nyback does not fall within the doctrine of the cases cited by defendant. The only resort to equity here is to enforce the trust that the law has impressed upon the assets of the defending corporation when it ceased to be a going concern. Such trust involves the equitable principle that creditors must have a preference over stockholders.

Counsel quote from De Grauw v. Mechan, 48 N. J. Eq. 219, 21 Atl. 193:

"Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. * * * It has no sympathy with underhanded efforts to gain a speculative advantage, and will not enforce a technical legal right, to the unconscionable injury of the defendant."

It must be the zeal of advocacy that has led counsel to characterize an effort to compel this corporation to pay this honest claim as "underhanded," and the result sought by this suit as "unconscionable injury" to the defendants. There is nothing that shocks the conscience in requiring this claim to be paid, if it can be done in accordance with approved principles. The aroused conscience of the chancellor is not available as a shelter for trustees who have appropriated the available means of a solvent corporation, and are engaged in a desperate struggle to retain them. It may be shocking to the defendants that the injured employé has been compelled to sell his claim too cheaply, but it is difficult to understand how such tardy sympathy can be framed into a valid defense to the present action. This contention as to the adequacy of consideration is set at rest in a still more satisfactory manner. The answer in section 5 sets out that, notwithstanding the recitals in said assignment, the complainant paid to said Nyback only a small and inadequate consideration for said judgment, not exceeding $15. But in paragraph 8 of such answer it is charged that:

"Complainant and others furnished said Nyback with the means wherewith to carry on said suit against the Champagne Lumber Company, and paid for said Nyback the costs and expenses incurred in said suit."

These averments must be read together. This last allegation furnishes an interpretation of the clause in the assignment relative to "sufficient and valuable consideration heretofore received"; and, when read in connection with the terms of the assignment, practically neutralizes defendants' former contention that the consideration was limited to $15. If, as averred, complainant has furnished Nyback the money to carry on four jury trials and two appeals, involving several years of active litigation, it may easily be comprehended that the actual consideration was not only adequate to support the transfer, but may well have exceeded the total amount of recovery. From a reading of the bill and answer together, the facts would seem to be that this young boy was hurt in the mill of the defendants in 1892; that the suit was instituted and prosecuted by him until 1903; that with such help as he could get from friends, he continued the contest through four jury trials and two appeals to the Circuit Court of Ap-

peals; that from time to time the present complainant had advanced Nyback certain sums of money to enable him to carry on this suit. In 1903 a motion for a new trial was pending. All the property of defendant corporation had been put beyond reach of legal process. Nyback's resources had been exhausted, and he realized that his situation was hopeless. He therefore, in consideration of advances theretofore made by complainant, and of the further sum of $15, transferred his causes of action to Jahn, who has continued the litigation up to this point.

Taking the whole record together, we are of opinion that the first objection is not well taken.

Second. In the seventh paragraph of the answer it is averred upon information and belief that the verdict was obtained by perjury committed by Nyback on the trial, and that, therefore, the complainant ought not to have the relief he seeks. To aver that one is guilty of perjury is to plead a mere conclusion of law. It is not enough that the sworn statement is untrue. It must be willfully made by one who does not believe it to be true. Rev. St. § 5392 [U. S. Comp. St. 1901; p. 3653]. In each of the four trials Nyback consistently testified to the facts attending his injury, and in each case swore that one Odegaard acted as interpreter for him when the contract of employment was made. These trials, with intervening appeals, covered a period of seven years. During all this time the defendant knew that Odegaard had knowledge as to the circumstances under which Nyback went to work at the mill; but Odegaard was not called as a witness upon either trial. The excuse given by the defendant is substantially that Odegaard had quarreled with the manager of the defendant, and stated that his testimony would be prejudicial to the defendants. After the verdict in 1903, the affidavit of Odegaard was presented before his honor Judge Seaman upon a motion for a new trial as newly discovered evidence, wherein his version of the accident was fully set forth, and tended strongly to contradict the testimony of Nyback. The motion was denied March 17, 1903, for reasons appearing in the learned judge's opinion. Nyback v. Champagne Lumber Co. (C. C.) 130 Fed. 786. This ruling was affirmed by per curiam opinion by the Circuit Court of Appeals, which may be found as Champagne Lumber Co. v. Nyback, 130 Fed. 1021, under date of January 30, 1904. This bill was filed in January, 1906. During all this time no direct attack was made upon the judgment. It is now sought by an answer filed in June, 1907, to attack the judgment collaterally for the alleged perjury of Nyback. The law seems to be that the acts for which a court of equity will, on account of fraud, set aside or annul· a judgment between the same parties, rendered in a court of competent jurisdiction, have relation to frauds extrinsic or collateral to the matter tried by the first court, and not to fraud in the matter in which the decree was rendered. Freeman on Judgments, § 489; United States v. Throckmorton, 98 U. S. 61, 68, 25 L. Ed. 93; Vance v. Burbank, 101 U. S. 519, 25 L. Ed. 929; Cotzhausen v. Kerting (C. C.) 29 Fed. 823; Heath v. Frackleton, 20 Wis. 320, 91 Am. Dec. 405; Danaher v. Prentiss, 22 Wis. 311. To illustrate the distinction: If it were averred that Nyback had been instrumental in depriving the defendants of Odegaard's

testimony, or was acting in collusion with him, the case might be brought within the rule. Steel v. Smelting Co., 106 U. S. 447, 452, 1 Sup. Ct. 389, 27 L. Ed. 226; Bailey v. Willeford (C. C.) 126 Fed. 803, 807. The case of Graver v. Faurot, 76 Fed. 257, 22 C. C. A. 156, is pressed upon our attention; but the distinguishing facts set out on page 262 differentiate the case so that it is not in conflict with the authorities above cited.

It is charged that Nyback was bound to disclose his interview with Odegaard; but there is no averment in the bill that Odegaard was in any way connected with the defendant corporation. Therefore perjury could not be assigned upon a statement by Nyback that the defendant had given him no instructions. Neither is the time or place stated where the supposed instructions were given. For aught that appears, Odegaard may have been a mere volunteer who, at some place remote from the mill, undertook to instruct and caution this green boy, who may have misunderstood or forgotten the same. On the other hand, the defendant seems to fall under its own condemnation so far as the duty of disclosure is concerned. It knew at all times during such litigation that Odegaard could give material evidence, but purposely suppressed such testimony, fearing that the same might not be serviceable. We should hesitate to convict Nyback of perjury on the testimony of Odegaard, because the evidence shows that, if his affidavit was true, he was guilty of a deliberate falsehood when he told defendants that his testimony would be injurious. A reference to Nyback v. Champagne Lumber Co., 109 Fed. 732, 48 C. C. A. 632, will show that defendants were at one time defending on the theory that Nyback was employed by one Barber as an independent contractor. I have a strong suspicion that Odegaard's testimony would not support that line of defense, and that this may have been the real reason, or an additional reason, why he was not called. However that may be, it is certain that Odegaard was kept in the background until a motion for a new trial was made upon newly discovered evidence after the fourth trial. Judge Seaman then had before him all the supposed new evidence. If the showing then made was sufficient to convict Nyback of perjury, the court would undoubtedly have set aside the verdict. If any facts properly bearing upon the charge of perjury were then withheld, it is now too late to assert them. Under well-settled principles, it seems plain that this collateral attack cannot now be successfully made. It is only third parties who can impeach a judgment collaterally. Freeman on Judgments, §§ 334–336.

Third. Defendants under the eighth and ninth paragraphs of the answer undertake to set up the defense of maintenance. It may be doubtful whether the averments are technically sufficient to make out a case against the present complainant. Vague averments on information and belief, and deductions of the pleader, cannot properly be accepted in an equity pleading as a substitute for facts. Hardt v. Heidweyer, 152 U. S. 547, 559, 14 Sup. Ct. 671, 38 L. Ed. 548. The answer avers that defendant had made a "fair and reasonable" settlement with Nyback, which was repudiated by him upon advice of this complainant and certain other persons unknown to it. The terms of such

alleged settlement are not disclosed. The court, therefore, cannot judge whether or not the settlement was "fair and reasonable," and is not disposed to accept the conclusion of the pleader in that regard. It must be remembered that Nyback was a mere boy, about 18 years of age, when he was hurt. Any adjustment of damages made with him while an infant was therefore voidable and liable to be repudiated when he reached his majority. The advice that complainant or other friends gave him as to abiding by the settlement cannot be weighed without knowing whether the defendant sought to impose upon him an unconscionable bargain. The defendants have withheld the facts by which alone the court could arrive at an intelligent conclusion.

In Finden v. Parker, 11 Mees. & W. 675, a definition of maintenance is laid down by Lord Abinger which has been generally adopted and which is cited with approval by the Wisconsin Supreme Court (Davies v. Stowell, 78 Wis. 338, 47 N. W. 371, 10 L. R. A. 190):

"The law of maintenance, as I understand it, upon the modern construction, is confined to cases where a man improperly, for the purpose of stirring up litigation and strife, encourages others either to bring actions or to make defenses which they have no right to make."

In Brown v. Bigne, 21 Or. 260, 28 Pac. 11, 14 L. R. A. 745, 28 Am. St. Rep. 752, the Supreme Court of Oregon held that a fair bona fide agreement by a layman to supply funds to an indigent plaintiff to carry on a pending suit in consideration of a share in the recovery is not per se void, either on the ground of champerty or public policy.

It has never been held violative of law or public policy to give financial aid to a poor suitor who is prosecuting a meritorious cause of action. In the absence of any bargain to share the recovery, no just criticism can attach to one offering such friendly aid. There is no suggestion that complainant ever had any such bargain with Nyback. The law does not tolerate the notion that a powerful defendant may force the abandonment of a suit whenever he is able to exhaust the slender means of a weak antagonist. Such rule would offer a powerful incentive to vexatious litigation, which it is the policy of the law to discourage. Neither ought such defendant to set up as a defense that the plaintiff was driven by stress to part with the cause of action for an inadequate price. I can see nothing in this branch of the defense that discredits the complainant, or ought to obstruct the way to equitable relief. Ever since this dispute came to the equity side of the court there has been a persistent effort to resurrect contentions that have been set at rest in the legal tribunals. The answer under consideration is largely devoted to this purpose. It is the duty of the court to impose some wholesome limitation upon strife, or it might run on forever. The record shows that defendants have had abundant opportunity to test every legal defense, and they appear to have freely availed themselves of such opportunities by every method that skill and learning could suggest. The judgments at law stand as conclusive evidence that there are no unsettled questions involving the merits of the controversy. As to all such questions they are res adjudicata.

We are therefore constrained to hold that the complainant is entitled to a decree applying the corporate assets in the hands of the de-

fendants to the liquidation of these judgments, and requiring the defendants Stewart and Alexander within a reasonable time to liquidate the same, together with the costs and disbursements of this action.